ANTHONY HANKEY & another *vs.* ASA W. CLARK.
ASA W. CLARK *vs.* ANTHONY HANKEY & another.

The tenants in common of two adjoining tracts of land on a river, the lower of which was subject to a mortgage, conveyed the upper, reserving to themselves, their heirs and assigns, the right to draw water from a reservoir on the upper tract for the use of the lower. Subsequently the equity of redemption of one of them in the lower tract was sold, and, through mesne conveyances, became vested in A., who also acquired a title in that tract, through mesne conveyances, under a foreclosure of the mortgage. *Held,* that the right to draw water under the reservation was vested in A.

BILLS IN EQUITY. The *first* bill was filed April 26, 1872, by Anthony Hankey and George A. Corser, alleging that they owned a tract of land on French River in Leicester, with a factory thereon; that they had a right to draw water from a reservoir and dam further up the river; and that the defendant, Asa W. Clark, interfered with this right.

The *second* bill was filed April 24, 1872, by Clark against Hankey and Corser, alleging that he owned the reservoir and dam, and that they had wrongfully drawn water therefrom. Hearing on both bills was had, at the same time, before *Chap-*

*man*, C. J., who made a report of the case substantially as follows:

Clark owned a tract of land on French River, with a saw and grist mill thereon, and also the reservoir and dam in question: and adjoining, but lower down the stream, was a tract owned by Hankey and Corser, with a factory thereon, known as the scythe factory property.

In 1829, Nathan Harkness, who then owned both tracts, conveyed them both to Thomas Wall, and Wall gave him back a mortgage on the lower tract only; this mortgage Harkness assigned in January, 1831, to the Leicester Bank, and the Leicester Bank in the same year assigned it to the Worcester County Institution for Savings, which in 1841 entered to foreclose, and in 1842 assigned the mortgage to Ebenezer Dunbar.

In August, 1831, Wall conveyed to Harkness an undivided half of both tracts, and in 1832 Wall and Harkness conveyed to Ebenezer Dunbar and Emery Bridges the upper tract, by a deed containing the following reservation: " The grantors reserving the privilege for themselves, their heirs and assigns, of drawing from the upper dam hereby conveyed, when the mills of the grantees do not pass so much for the use of their trip-hammer and grindstone works below, so much water as will run through a gate hole ten inches square until the water shall be drawn down to a point three inches below what is called the summer pond, with the right to enter on said dam to open and shut the gate, it being the duty of the grantors on such occasions to open and shut the gate for themselves." Clark became possessed, through Dunbar and Bridges, of an undivided fourth of the upper tract in 1853, and of the rest of that tract in 1864.

In 1845 Dunbar conveyed to Joseph Pratt and Edward Earle the lower tract by the following description: " The scythe shops, same water privilege and outbuildings now occupied by the Leicester Scythe Company, it being the same property conveyed to me by assignment of mortgage from the Worcester County Institution for Savings." Pratt and Earle in 1847 conveyed to Alpheus P. Kimball the lower tract, " also the privilege of drawing water from the upper dam which was reserved " in the deed

from Wall and Harkness to Dunbar and Bridges; and from Kimball the lower tract came by deeds containing the same description to Hankey and Corser.

In 1834 the interest which Harkness had in the lower tract was sold on execution and by mesne conveyances was vested in Hankey and Corser.

Hankey and Corser, and those who preceded them in the possession of the lower tract, have exercised under a claim of right the privilege of drawing water, as described in the deed from Wall and Harkness to Dunbar and Bridges, from the time of the date of that deed; but Clark contended that they had not acquired any right by adverse user by reason of the owners of the upper tract being for some time under a disability. The facts giving ground for this contention it is not now necessary to state.

The questions of law upon this report were reserved for the consideration of the full court, such decree to be entered as law and equity should require.

*P. E. Aldrich,* for Hankey and Corser.

*T. L. Nelson,* for Clark.

COLT, J. The parties in these cases own adjoining tracts of land on French River, with a mill and mill privilege on each. Hankey and Corser, plaintiffs in the first suit, own the lower tract, known as the scythe factory property, and claim the right to draw water from a dam and reservoir on the upper tract owned by Clark, the defendant in that suit. The first bill is brought to prevent interference with this right. The upper tract, with the saw and grist mill privilege, is claimed by Clark to be free from any water rights in favor of the scythe factory, and he charges in the other suit that the defendants have wrongfully diverted the water. Both cases must be decided by determining whether, upon the deeds and facts stated in this report, the owners of the lower mill have acquired and now hold by grant or adverse use the rights claimed by them.

In 1829, Harkness owned both parcels. He conveyed the whole to Wall and took back a mortgage on the scythe factory property only. This mortgage Harkness assigned to the Leicester Bank

in January 1831, and in August of that year took from Wall a conveyance back of an undivided half of both privileges. In 1832, Wall and Harkness, thus owning the entire estate as tenants in common, subject to the mortgage on the lower privilege, conveyed the upper privilege to Dunbar and Bridges, with the following reservation: " The grantors reserving the privilege for themselves, their heirs and assigns, of drawing from the upper dam hereby conveyed, when the mills of the grantees do not pass so much for the use of their trip-hammer and grindstone works below, so much water as will run through a gate hole ten inches square until the water shall be drawn down to a point three inches below what is called the summer pond, with the right to enter on said dam to open and shut the gate, it being the duty of the grantors on such occasions to open and shut the gate for themselves."

The language of this clause is reasonably plain. It reserves a valuable water right to Wall and Harkness, their heirs and assigns, then owners of the equity of redemption, for the use of their works below. Such an incorporeal hereditament, created by grant or reservation, may exist independently of any particular parcel of land, or its use may be restricted to a described locality. In either form it is an assignable interest in the realty, a distinct subject for grant or reservation. When the right is granted or reserved as appurtenant to a particular estate it passes with the land and cannot be used separate and distinct from it. The use is restricted to the occupants of the principal estate to which it is annexed. *Goodrich* v. *Burbank*, 12 Allen, 459. *De Witt* v. *Harvey*, 4 Gray, 486.

The title of the present owners of the scythe factory comes in part through Dunbar, who completed the foreclosure in 1844. He conveyed the same by the following description, namely, " the scythe shops, same water privilege and outbuildings now occupied by the Leicester Scythe Company, it being the same property conveyed to me by assignment of mortgage." His grantees, Pratt and Earle, conveyed the same, describing the water rights as " the privilege of drawing water from the upper dam which was reserved " in the deed of Wall and Harkness to Dunbar and

Bridges. And under this description it has come to the present owners. The present owners have also acquired by mesne conveyances the interest which Harkness had after the conveyance with reservation to Dunbar and Bridges, as tenant in common of the lower privilege, subject to the mortgage. This interest was sold on execution against Harkness before foreclosure. The interest of both mortgagor and mortgagee was thus acquired.

Incorporeal rights of this description acquired by the mortgagor subsequent to the date of the mortgage, for the permanent improvement of the estate, and annexed by the terms of the conveyance to the realty, may be considered as passing to the mortgagee by the foreclosure, to be exercised by him at his election. There is no reason why incorporeal rights annexed to the realty should not enure to the benefit of the mortgage security in the same manner as improvements in the nature of fixtures enure. *Winslow* v. *Merchants' Insurance Co.* 4 Met. 306, 310. Until foreclosure, the mortgage is deemed a lien or charge subject to which the estate may be conveyed, improved, and in other respects dealt with as the estate of the mortgagor. *Ewer* v. *Hobbs*, 5 Met. 1, 3. This rule preserves the benefit of such rights to the whole estate, and best effectuates the intention of the parties. The owner of the servient tenement under whose grant the right is exercised is estopped to deny the right to any lawful occupant of the dominant estate. If the right did not pass to the assignee of the mortgage as part of the mortgaged estate, then it remained in the mortgagors as part of the estate not subject to the mortgage, and passed by the conveyance of Harkness's interest in the equity to the present owners. If it did not attach to the mortgaged estate it was not extinguished by the foreclosure, and is still a valid right as against the owner of the upper privilege, who has acquired no title to it, and holds his own estate subject to the reservation. It is sufficient for this case to say that, as against him, the owners of the scythe factory establish their right by showing title to the land by mortgage or otherwise, and proving an actual enjoyment of the easement for many years under claim of right, — an enjoyment which is entirely consistent with the title of both the owners of the servient and domi-

nant estates, and with the appropriation which the owner of both mills lawfully made in favor of the lower.

The case of *Brace* v. *Yale*, 4 Allen, 393, is relied on as conflicting with this result. But the facts in that case fail to show any easement annexed to Yale's estate by prescription or by direct or implied grant, and title to it by the Sedgwick mortgage was held not to carry such right as appurtenant.

*Decree for the plaintiffs in the first suit with costs; and in the second, bill dismissed with costs.*