# Richmond.

## DIFFENDAL v. VA. MIDLAND R. R. Co.

### JANUARY 9th, 1890.

1. EQUITABLE JURISDICTION AND RELIEF.—*Easements—Injunction—Case at bar.*—
Where right to pipe water from a spring to a certain tank is granted by
the land owners to railway company by recorded deed, and the land is
subsequently granted to one knowing that the pipes are laid across the
land, and that the topography requires them to be laid as they were:
*held,* that grantee takes subject to the easement, and will be enjoined
from interfering, though the tank be located differently from the place
named in the deed, where the change does not affect the pipes' position.
2. IDEM—*Rehearing—Case at bar.*—A rehearing will not be awarded upon
evidence that the railway company were suffered to lay the pipes in
their present position as a temporary convenience, and not as part of
the contract, nor upon affidavit of one previously examined as to the
transaction.

Appeal from decrees of corporation court of Danville, ren-
dered June 4, 1888, and July 21, 1888, respectively, in the
chancery cause wherein the Virginia Midland railway company
was complainant and William Diffendal was defendant. The
injunction awarded the complainant, having been perpetuated,
and the defendant's petition for a rehearing having been dis-
missed, he appealed. Opinion states the case.

*Rutherford & Page* and *G. W. Crumpecker,* for the appellant.

*Kirkpatrick & Blackford,* for the appellee.

FAUNTLEROY, J., delivered the opinion of the court.

On the 11th day of September, 1874, J. K. Millner and J. M. Walker, who then owned and controlled the land, made an agreement, in writing, with the Washington City, Virginia Midland and Great Southern railroad company, of which the Virginia Midland railway company is successor, whereby, in consideration of $500, which was subsequently paid, the railroad company was granted the right to, and use of, the water from a certain spring upon the lands of the said Millner and Walker, and the right to lay down pipes to convey the water from the said spring to a water tank to be constructed on the right of way of the said railroad. The said agreement was admitted to record in the clerk's office of the town of Danville January 4th, 1876. In pursuance of the said agreement, the said railroad company did lay down the pipes leading from the said spring to its right of way, not to a tank on the north side of the said roadway, but to a tank on the opposite side of the same. The said railroad company did not build the tank on the north side of their road, as specified in the said agreement, because the exact spot so specified was not eligible for the purpose; but its failure to do so was known to the said Walker and Millner, who made no objection, and who were also cognizant of the laying of the pipes, which were laid, as laid, under their supervision and by their direction; and who, after the said pipes were so laid, with their knowledge and consent, received the $500 consideration stipulated therefor, and then ratified the manner of executing the contract in every particular; and never, to this day, have they, or either of them, raised the least objection to the action of the railroad company in the premises, or interposed the slightest obstacle to its enjoyment of the water from the said spring and the easement appurtenant thereto. The said agreement was duly recorded, and the railroad company took possession and entered upon the open and notorious enjoyment and use of the said spring and of the said pipes, without question, interference, or hindrance, till the 20th day of August, 1884, when the appellant,

William Diffendal, who had purchased the said land in December, 1883, required the said railroad company to remove the said pipes, and, in default thereof, undertook to remove the same. On the 22d day of October, 1884, the appellee, the Virginia Midland railroad company, obtained from the corporation court of Danville, Va., an injunction restraining the appellant, William Diffendal, from interfering with the said pipes and the enjoyment of the water from the said spring by the appellee until the further order of the court. The appellant demurred to the bill and answered the same, and took evidence in support thereof, but the court overruled the demurrer; and at the July term, 1888, of the said court, the injunction was made perpetual.. From this decree this appeal is taken.

The first assignment of error is to the overruling of the demurrer on the ground that the court of equity had not jurisdiction of the remedy.

The court did not err in overruling the demurrer. On the 8th of September, 1884, the appellant, William Diffendal, who had become the owner of the land around and nearest the spring, after it had changed owners more than once, during the nearly ten years of the enjoyment by the railroad company of the easement or servitude of the water and the pipes, went to the said spring and drove a wooden plug into the pipe so as to cut off completely the supply of water to the depot of the railroad, which thereby suffered daily and hourly damage by having its employees and passengers cut off from the supply of water, and having at heavy daily outlay and inconvenience to provide water for drinking purposes and for their water closets or to have them closed up or used without water at the risk of becoming offensive and a nuisance to public health and comfort—an irreparable damage and public injury for which the railroad company had no adequate remedy at law—sounding simply in damages and an inconvenience, worry, loss, and risk

to the appellee and to the public, which could not be estimated in damages, and which, therefore, called for a restraining order.

The second and third assignments of error go to the merits of the case upon the evidence.   The court did not err in perpetuating the injunction.   The pipe was laid many years before Diffendal purchased the land, and was so laid by the consent and under an agreement with the former owners, which was duly put to record.   Diffendal purchased the land with full and actual knowledge that the pipe ran diagonally across the land in its route to the street, and that the topography of the land made it necessary that it should be located just where it was. Not only did he know when he purchased, that the water was conveyed by the pipe diagonally across the land which he purchased, and that it was so by contract between his vendors and the railroad company; but the fact was open and visible that the water from the spring was conveyed by a pipe, the proper and necessary location of which was along the ravine, where it was laid, and along the natural and fixed channel of the branch flowing from the spring.   Diffendal bought the land with the full knowledge that a pipe carried the water from the spring to the railroad tank, and that to do so, it must follow the ravine, just where it is, or do the impossible feat of running up hill.   Knowing this, he took the land subject to the servitude which then, and for long years, had existed upon the land in favor of the railroad company, imposed upon it by his grantors; and, taking it subject to such servitude, he cannot now ignore the rights of the railroad company so acquired and vested.   The contract must be construed with reference to the topography and to what was done at the time by the parties in locating the pipe; and in considering the relation of Diffendal, as a vendee from Millner & Walker, to the servitude which his vendors had fixed upon the land by their contract with the railroad company, he will be presumed to have bought the land with reference to its condition at the

time of the sale, subject to the easement or servitude in favor of the railroad company, of which he not only had constructive notice and admonition to inquire by the recorded contract, but which he actually knew, could see and did see, and well knew to exist. Washburn on Easements and Servitudes, p. 26, says: "If, instead of a benefit conferred, a burden be imposed upon the portion sold, the purchaser, provided the marks of the burden be open and visible, takes the property with the servitudes upon it." On page 81 of the same book (2d edition), in discussing the case of *Pyer* v. *Carter*, 1 Hurlst. and N., 922, where there was a drain upon the premises conveyed, which was not mentioned in the grant, but which was necessary to the enjoyment of the adjoining property, the author says the court held that the purchaser "must have known that the tenement claiming the drain must have some drainage, and he was, therefore, bound to examine and ascertain its existence, and that no actually apparent signs were necessary to charge him with notice of the drain." In the case at bar the grant by Millner & Walker to the railroad company was the use of the water from the spring and the putting down a pipe to convey the water from the said spring to the water tank. These pipes (or pipe) was to be laid along the new wagon road then being constructed by the grantors, Millner & Walker (which said new wagon road the appellant assumes or asserts to be the present Main street of North Danville, which was not then laid off, or even contemplated, so far as this record shows); but, as the spring is a considerable distance (80 feet) from the "new road," or present Main street, the pipe had to be laid over the land somewhere to reach the said Main street; and this indefinite location over the land to reach the Main street, not fixed by the contract, was settled by the topography, and made definite and fixed by the consent and concurring action of the parties at the time, in locating the pipe where it was put, has been all the time, and now is.

In the case of *Outhawk* v. *Railroad Co.*, 71 New York, 197,

a case very similar to this, Earl, J., says: "Plaintiff's grant to the railroad company is general and indefinite. It does not define or limit the place in which the pipe was to be laid, nor specify what water was to be conducted. Hence the surrounding circumstances, such as the existence of the spring, the channel over plaintiff's land, the execution of the deed by Brown, the topography of the country, and the acts of the parties both prior and subsequent to the grant, may be considered, for the purpose of learning the intention of the parties, and thus defining and limiting the easement granted. (*French* v. *Hays*, 43 N. H.) * * * After the grantee had once laid his pipe, and thus selected the place where it would exercise its easement thus granted in general terms, what was before indefinite and general, became fixed and certain, and the easement could not be exercised in any other place." See *Jennison* v. *Walker*, 11 Gray, 423.

In *Bannon* v. *Angier*, 2 Allen, 128, Bigelow, J., says: "Where a right of way, or other easement, is granted by deed without fixed and definite limits, the practical location and use of such way or easement by the grantee under his deed, acquiesced in by the grantor, at the time of the grant, and for a long time subsequent thereto, operate as an assignment of the right, and are deemed to be that which was intended to be conveyed by the deed, and are the same in legal effect as if it had been fully described by the terms of the grant."

So long as the pipe is on Diffendal's land it is seeking the street by the natural route of the topography, and as it was laid by the parties executing the contract; and the change of the location of the tank, from the north side to the south side of the railroad track (which was done with the knowledge and acquiescence of Millner & Walker, and nearly ten years before Diffendal bought the lot), did not, in any way or degree, affect the position of the pipe; nor does the use of the water flowing through the pipe affect either the spring itself or the land under which the pipe is laid. Both remain the same, whether

the water conveyed be drunk in the depot or seek the Dan river through the water closets, or goes into the engines of the railroad company.

The court very properly dismissed the petition for a rehearing of the case upon the affidavit of the witness Millner, who had testified and been elaborately cross-examined by appellant as to the transaction referred to in his affidavit. But even if there was reason for a rehearing, the petition was filed after the term of the court had ended, at which the decree had been entered. *Hodges* v. *Davis*, 4 H. & M., 400; *Parker* v. *Logan*, 82 Va. (7 Hansbrough), 376. Even if, however, the facts set forth in the petition were true, and it had been filed in time, they would not justify a rehearing or review of the case. We are of opinion that there is no error in the decree appealed from, and the same must be affirmed.

DECREE AFFIRMED.