SARATOGA STATE WATERS CORPORATION, Appellant, *v.* GEORGE D. PRATT, Respondent.

Contracts by state — constitutional law — validity of agreement between commissioners of State Reservation at Saratoga Springs giving plaintiff the right to use and possess certain property of the state for specified purposes — refusal of conservation commissioner to carry out such agreement — when plaintiff entitled to injunctive relief from acts of commissioner — personal liability of commissioner as wrongdoer — unconstitutionality of chapter 204 of Laws of 1917 attempting to confirm acts of commissioner.

1. In the absence of constitutional restrictions the control by the state of its proprietary estates and institutions is plenary and its, agreements, unaffected by deceit, corruption, collusion or illegal unfairness, as the agreements at the bar are, are not justiciable.

2. The agreement entered into between the commissioners of the State Reservation at Saratoga Springs with the Saratoga State Waters Corporation by authority of chapter 569 of the Laws of 1909, as amended by chapter 394 of the Laws of 1911, was duly executed by the contracting parties. There was not in the making of it any deceit, corruption or unfairness, and it was within the statutory authority of

the commissioners.  None of its provisions inherently infracts the statutes or transcends the statutory authorization to the commissioners, with this exception: The provision that any difference arising between the parties during the operation of the instrument shall be submitted for final and conclusive adjudication to arbitrators is, perhaps, unenforcible.  This covenant is not so interwoven with the other agreements of the instrument as to affect its integrity and validity.  Hence, the plaintiff is entitled to the possession of the property mentioned in the instrument and the possession of the defendant, the conservation commissioner, who has taken possession of it and excluded plaintiffs therefrom, is wrongful and without legal right.

3.  The instrument granted to the plaintiff complete and perfect rights of use and possession as described in it.  It was operative and effective as a grant and vested in the plaintiff an unconditional interest or estate in the land.  It was an agreement on the part of the state that the plaintiff should have and retain the real property — an incorporeal hereditament.  The rights granted the plaintiff were not revocable by and at the will of the state or its representatives.  The state, or the legislature, of course, could not repeal or abrogate the grant of real property made by it.

4.  The action in equity for injunctive relief from the possession or an interference by the defendant is the proper remedy.  An injunction is the usual remedy invoked by the owner of a legal easement to remove an obstacle to its possession and enjoyment.  The fact that there is neither privity of estate nor privity of contract between the owner and the aggressor is immaterial.

5.  The acts of the defendant in preventing, by his anterior use and possession, the plaintiff entering into the rights and privileges granted it by the instrument were unauthorized and unlawful and constituted the defendant an individual wrongdoer.  In them the defendant ceased to be a public officer and became a private wrongdoer and chapter 204 of the Laws of 1917, in so far as it purported or was intended to adopt or confirm those acts, or violate the grant of the state to the plaintiff, destroyed property rights protected by the Constitution and was ineffective and immaterial.

*Saratoga State Waters Corporation* v. *Pratt,* 184 App. Div. 561, reversed.

(Argued October 15, 1919; decided January 6, 1920.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered October 5, 1918, reversing a judgment in favor of plaintiff

entered upon a decision of the court on trial at Special
Term and granting a new trial.

The nature of the action and the facts, so far as
material, are stated in the opinion.

*Henry W. Williams* and *Edgar T. Brackett* for appellant.
The fairness of the lease is not in issue. There is no
evidence to show unfairness. The former commissioners
were sole judges of the terms and their action cannot be
reviewed. (*People* v. *Stephens*, 71 N. Y. 527; *People ex
rel. Graves* v. *Sohmer*, 207 N. Y. 450.) The fact that Mr.
Pratt happens to be a state officer does not prevent his
being sued if, as such officer, he acts illegally or beyond
his official power as such state officer. As to such excess
he ceases to represent the state and his official position
is no justification and he may be sued as an individual,
and such suit is not against the state. (*Litchfield* v. *Bond*,
186 N. Y. 66; *United States* v. *Lee*, 106 U. S. 196; *Saranac
Land & Timber Co.* v. *Roberts*, 195 N. Y. 303; *Sanders* v.
*Saxton*, 182 N. Y 477; 33 Misc. Rep. 389; *Wright* v.
*Shanahan*, 149 N. Y. 495; *Trani* v. *Gerard*, 181 App. Div.
387; *Flood* v. *Van Wormer*, 147 N. Y. 284; *Abell* v. *Van
Gelder*, 36 N. Y. 513; *Danihee* v. *Hyatt*, 151 N. Y. 493;
*Finnegan* v. *Carraher*, 47 N. Y. 493; *Clasan* v. *Baldwin*,
129 N. Y. 183; *Hennessey* v. *Paulsen*, 147 N. Y. 255.)
Chapter 204 of the Laws of 1917 cannot be considered
with reference to this case. If it could, it does not have
the effect claimed. If it did, then the statute would be
unconstitutional. For these reasons the Appellate Divi-
sion erred in denying the plaintiff relief. (*Litchfield* v.
*Bond*, 186 N. Y. 66; *Cogswell* v. *N. Y., N. H. & H. R. R.
Co.*, 103 N. Y. 10; *Johnston* v. *Spicer*, 107 N. Y. 185;
*Matter of Mayor, etc.*, 99 N. Y. 569; *Donald* v. *State*, 89
N. Y. 36; *Salas* v. *United States*, 234 Fed. Rep. 842; *Bailey*
v. *Mayor*, 3 Hill, 521, 539; *Republic of France* v. *Vichy
Co.*, 191 U. S. 437; *People ex rel. Vil. of South Glens Falls*
v. *P. S. Comm.*, 225 N. Y. 216; *People* v. *Roper*, 35 N. Y.

629; *People ex rel. Iroquois Door Co.* v. *Knapp,* 186 App. Div. 172.) The instrument in question is a lease or concession. It describes and conveys an estate in land or an incorporeal hereditament. As to these it is executed, not executory. The executory covenant is as to collateral matters not affecting possessory rights. (*Harris* v. *Harris,* 75 App. Div. 216; *Coleman* v. *M. B. Improvement Co.,* 94 N. Y. 229: *Moore* v. *Brown,* 139 N. Y. 127.)

*Adelbert F. Jenks* for respondent. The contract, the validity of which is involved in this action, is not a "lease or concession," within the meaning of the statute; nor was it made for proper rentals or upon other proper terms; many of its provisions are in violation of the statute authorizing the board to grant leases or concessions, and the same is, therefore, unauthorized and void. (*Syracuse Water Co.* v. *City of Syracuse,* 116 N. Y. 167; *Parpitt* v. *Furguson,* 159 N. Y. 111; *Gale* v. *Vil. of Kalamazoo,* 24 Mich. 344; *Milhau* v. *Sharp,* 27 N. Y. 611; *Smith* v. *Cornelius,* 30 L. R. A: 747; *Haggart* v. *Morgan,* 5 N. Y. 422; *National Construction Co.* v. *H. R. W. P. Co.,* 179 N. Y. 439; *National Contract Co.* v. *Hudson River Water Co,* 192 N. Y. 220; *Bell* v. *Leggett,* 3 Seld. 176; *Dugan* v. *Anderson,* 36 Md. 507; *Johnson* v. *Trask,* 116 N. Y. 136.) The statute, while using the words "may grant leases or concessions for the use of any portion of the said land, water or gases," does not contemplate a grant of any vested interest or estate therein; but simply a privilege to enter upon the reservation lands and to bottle and sell the water. (*Smith* v. *Cornelius,* 35 L. R. A. 747; *Jones* v. *Kansas City,* 178 Mo. 528; *Moore* v. *Brown,* 139 N. Y. 127; *Roberts* v. *Lynn Ice Co.,* 73 N. E. Rep. 523; *Huntington* v. *Asher,* 96 N. Y. 604.) This action is, in substance, clearly against the state and cannot be maintained. (*Sanders* v. *Saxton,* 182 N. Y. 477.) It is elementary in the law of contracts that where the covenants to be

performed are wholly executory, either party may refuse to perform and thereby breach the contract, in which event the party not in default has a just claim for damages. (*Parr* v. *Village of Greenbush*, 112 N. Y. 260; *People* v. *Stephens*, 71 N. Y. 527.) The legal effect of chapter 204 of the Laws of 1917, which created a capital fund for the use of the Saratoga Reservation and directed the conservation commission to bottle and market the surplus waters of said reservation was not to impair the obligation of the contract, but rather to ratify the action of the conservation commissioner in refusing to perform it. (*Danolds* v. *State*, 89 N. Y. 36; *Lord* v. *Thomas*, 64 N. Y. 127; *Cook* v. *Gray*, 2 Houst. 455; *Caldwell* v. *Donaghey*, 45 L. R. A., N. S., 721.)

COLLIN, J. The plaintiff, a domestic corporation, seeks the judgment that it is entitled to the possession of the property described in the complaint, that the defendant deliver to it and be enjoined from interfering with it in taking the possession, and that it recover the damages sustained by reason of its exclusion from the property. The Special Term, by its decision on trial, granted the judgment. The Appellate Division reversed the judgment in a non-unanimous decision and granted a new trial. The plaintiff, stipulating that judgment absolute be rendered against it in case we affirm the the judgment of reversal, presents the appeal.

The property involved is within or connected with the State Reservation at Saratoga Springs. The State Reservation consists of lands containing mineral springs, buildings and machinery, and personal property used in the bott ng and marketing, or the use and disposition of the waters of the springs. The state acquired it in virtue of and pursuant to chapter 569, Laws of 1909, and the amending act, chapter 394, Laws of 1911. The statute created a board designated " The Commissioners of the

28

State Reservation at Saratoga Springs," to consist of three persons, and empowered the commissioners to acquire the property. Section 5 of the act of 1909, relating to the general powers of the board of commissioners, had the provision: " Said board  *  *  *  may grant concessions and leases of any portion of the same upon terms to be fixed by it,  *  *. *." In 1911 (Laws of 1911, chapter 394) the act was amended and given the form it had when the instrument, hereafter to be described, was executed. It provided in section 2 that no part of the reservation property " shall be sold or aliened without the consent of the legislature, except by concession granted and limited as hereinafter provided." In section 4 it provided that the reservation properties should be maintained and used for the purpose, among others, of promoting the resort to the springs of the people of the state for health, and the other suitable use of the reservation by the people and of providing the waters to the people for drinking free of charge. Section 5 provided: " Said board shall have the care, custody and control of said reservation, and of all the mineral springs, wells, mineral water and natural carbonic acid gas thereon, therein, or thereunder, and of all the rights, easements, and interests acquired by it. The said board shall make reasonable provision for the free drinking of said waters at points as near as shall be convenient to the respective sites of the springs producing said waters; it may prescribe and publish and enforce all proper regulations for the maintenance and care and protection of said properties, and for the distribution and proper use of said springs, wells, waters and gases and for the other maintenance, care and protection of said reservation. The board may, for proper rentals or other payment and upon any other proper terms, grant leases or concessions for the use of any portion of the said land, waters or gases; but every such lease, concession or use shall by its terms be subject to reasonable provision for the free drinking of such waters

and shall provide that the use by the lessee, concessionee
or concessionees of any property or right included in the
state reservation shall be at all times subject to the
reasonable regulations of the board, and that all uses of
the waters, gases, lands or interests by the lessee,
concessionee or concessionees shall be subject at any
time to the free inspection of the board and its represent-
atives.   The board may prescribe the terms upon which
any excess of mineral water and gas not used on said
reservation, or used under such concessions, shall be sold
or distributed and shall prescribe the names, labels and
advertisements to be affixed to the bottles or other vessels
containing such waters or gases or to be published; and
the said board may itself sell or dispose of such excess of
water.   *   *   *   All sums received by said commission
shall be paid into the state treasury, and all the expenses
of said commission shall be paid upon the warrant of
the comptroller; it shall report in writing each year to
the legislature, specifying, in detail, its receipts and
expenditures for such year."   The statute constituted the
commissioners a body corporate for the purposes of
adopting any mark or device they would use in connection
with the sale and use of any of the mineral waters and to
take prescribed means to secure the exclusive right to the
use of the name or device under the statutes of any state
or country where the sale of such waters may be carried
on, of prosecuting violators of any law for the regulation
of the sale of mineral waters and to have all other powers
conferred upon corporations in this state by the General
Corporation Law and which are not inconsistent with
the provisions of the act.   (Laws of 1911, chapter 394,
section 5.)   The right of the legislature to give the powers
conferred by the statute is not and cannot be questioned.

The basis of the action is an instrument in writing
executed " between the State of New York, acting by
the Board of Commissioners of the State Reservation at
Saratoga Springs, party of the first part," and four

individuals, parties of the second part. The plaintiff, Saratoga State Waters Corporation, is the successor and, in all respects, takes the place of the four individuals and will be treated in this opinion as having been the original party of the second part. The instrument bears date March 6, 1916, and is voluminous, comprehensive and detailed. Deferring. for future statement, as the discussion necessitates, particular parts, the general effect of its provisions are: By virtue of the statutes the parties make the agreements; in consideration of the rents, covenants and ·stipulations mentioned the state :" doth demise and lease " unto the plaintiff designated mineral spring properties, subject to the right of the state to take for its bathing business the surplus waters from any and all of the springs not used by the plaintiff for drinking or bottling; the right to bottle and sell under the terms of the lease such surplus waters of any other spring, the water of which the commissioners may decide to place upon the market during the leased term; described buildings, machinery and equipment; the use of roads and paths and the lands required for the erection of additional structures necessary for the proper prosecution of the business contemplated by the contract, and which may not be needed for state reservation purposes; the plaintiff ·shall •market to its best endeavors the •surplus waters of the springs at the prices existing or thereafter mutually agreed upon, and maintain all necessary arrangements, appliances and services to enable the public at all reasonable times to drink the waters at their sources, without charge, at the existing facilities and at the other places thereafter agreed upon by the parties, and shall expend each year not less than five per cent of the gross receipts for the preceding year for advertising purposes; shall arrange forthwith for an efficient and economical distribution of waters in the city of New York, and for prompt distribution of waters to patrons from warehouses in the principal cities in the United States and elsewhere,

whenever and wherever the business under the lease shall warrant; shall carefully keep accounts of the entire business which shall be open at all times to the inspection of the commissioners; shall operate in the most economical manner possible, consistent with efficient conduct of the business; shall within thirty days of December 1 of each year render to the commissioners a statement of the net profits for the year and pay over to the commissioners the agreed upon amount, then unpaid, as and for the rental under the lease; shall pay to the state as and for the rent of the demised premises annually, in quarter payments, prescribed royalties and percentages. The agreement provides the manner of closing up the business and settling the matters between the parties at the termination of the term. The plaintiff shall make such ordinary repairs to all machinery, fixtures and appliances as are necessary to keep the same in as good working condition as when received from the state. The use by the company of any property or right shall be at all times subject to the reasonable regulations of the commissioners and the valid municipal ordinances of the city of Saratoga Springs, and the inspection at all times of any part of the property by the commissioners. The state shall take proper measures to keep the springs and fixtures connected with them in good order and give reasonable attention and care towards maintaining the flow and character of the waters; shall keep buildings, machinery and fixtures insured for not less than seventy-five per centum of their actual value, the avails of which in case of damage by fire shall be applied in repairing or restoration; shall make all replacements and improvements to the buildings, grounds and piping (but not ordinary current repairs) necessary to maintain their present efficiency; shall at frequent intervals cause such tests, accessible to the company, to be made by the chemist in charge of its laboratory as may be requisite to insure confidence in the purity and mineralization of the waters sold. It contained

the provisions: "And it is further understood and agreed by and between the parties that this contract is made subject to the provisions of any and all statutes heretofore enacted by the Legislature of the State of New York relating to the management and government of the Reservation and the mineral water thereon; and all such enactments enter into and become a part of this contract with like effect as if specifically set forth herein.   *   *   * And it is further covenanted, agreed and understood by and between the parties to this agreement that the same shall be valid and effectual only so far as the Commissioners of the State Reservation at Saratoga Springs are lawfully empowered to enter into the same; and, in case it shall be held that in respect to any covenant, agreement, condition or provision contained in this instrument, the said Commissioners have exceeded their lawful powers, they shall in no event be held liable to the parties of the second part for or on account of any such covenant, agreement, condition or provision, but the same shall be void and of no effect; and that as to any and every covenant, agreement, provision and condition which involves the expenditure of moneys by the party of the first part, it shall be valid and operative only in case of an appropriation by the Legislature of the State of New York adequate for the particular purpose and properly applicable thereto and to the extent of such appropriation only.   But in case said Commissioners should be without funds appropriated for any expense to be incurred for the carrying out of any improvements, repairs or other acts or things to be done by the State under the provisions of this agreement, then and in such case the same may be made, done or performed by the parties of the second part and charged against the rents due and accrued or thereafter to accrue or become due under and in pursuance of the provisions of this agreement." The estate or interest created should begin April 25, 1916, and continue until May 1, 1921, with

four renewal privileges (the provisions having been fulfilled) to the plaintiff of five years each — the entire period not to exceed twenty-five years from May 1, 1916.

The plaintiff was organized and officered pursuant to requirements of the instrument ·with a paid cash capital of thirty-five thousand dollars and has duly performed all the terms and conditions of the instrument in so far as it has been permitted to.   It has been interfered with as follows:  On April 19, 1916, the legislature transferred the powers of the commissioners of the state reservation at Saratoga Springs to the conservation commission. (Laws of 1916, chapter 257, section 1.)   The defendant was on that date and at all times since has been the conservation commission.   The plaintiff endeavored to take possession, pursuant to the stipulations in the instrument, of the property subject to the instrument, and the defendant at all times since and including April 25, 1916, has wholly prevented it from taking possession of or exercising any rights over the property and from performing the terms of the instrument.   The defendant is, and at all times since and including April 25, 1916, has been, in, and withholds from the plaintiff, the possession.

The instrument was duly executed by the contracting parties.   There was not in the making of it any deceit, corruption or unfairness.   The elaborate contents manifest deliberation, thoughtfulness and caution in designing the substance and form of it.

The instrument in its general nature and intendment is within the statutory authority to the commissioners. The statutes disclose that the state as the proprietor of the springs and property producing mineral and salable waters intended to enter the markets for those waters, through the direct action of the commissioners or under arrangements made by them.   The statutes authorized the distribution and sale beyond the confines of the reservation of the waters not required or used

within it.  The general scheme of the instrument of March 6, 1916, was to obligate the plaintiff to bottle, at the reservation, waters, not required for drinking there or for bathing purposes, to sell them, at the fixed prices, as abundantly and broadly as reasonable diligence and the best skill and ability of the plaintiff could effect and pay the state the stipulated royalties and compensation.  The scheme was clearly within the .statutory intendment.  The provision of the statute, " And no part of ' the property acquired for such purpose (the reservation) shall be sold or aliened without the consent of the legislature, except by .concession granted and limited ·as hereinafter provided," did not relate to or interdict it.  The commissioners might lawfully grant to the plaintiff the rights, privileges and property necessary or reasonably accessory to the fulfillment of it.

The defendant seeks to nullify the instrument upon the ground that terms and stipulations on the part of the state were improper and not authorized.  He states and urges specifications in support of the ground.  A discussion of each will not be useful.  Certain of them are refuted by the general declarations we have made.  Others do not possess merit.  Others were purely business propositions to be considered and discussed between the parties to the instrument and determined by them.  The state, of course, has the right and the power to enter into obligations.  In the absence of constitutional restrictions its control of its proprietary estates and institutions is plenary and its agreements, unaffected by deceit, corruption, collusion or illegal unfairness, as the agreements at the bar' are, are not justiciable.  A scrutiny and consideration of each specification of defendant's counsel leads to the conclusion that not one inherently infracts the statutes or transcends the statutory authorization to the commissioners, with this exception: The provision that any difference arising between the parties during the operation of the instrument shall be sub-

mitted for final and conclusive adjudication to arbitrators is, perhaps, unenforceable. Parties cannot undertake by an independent covenant of a contract to provide for an adjustment of differences arising in its performance by arbitration, to the exclusion of the courts. (*President, etc., D. & H. C. Co.* v. *Pennsylvania Coal Co.,* 50 N. Y. 250.) This covenant, manifestly, is not so interwoven with the other agreements of the instrument as to affect its integrity and validity. (*Central N. Y. Tel. & Tel. Co.* v. *Averill,* 199 N. Y. 128, 140.) The evidence supports the findings of the trial court that the plaintiff is entitled to the possession of the property mentioned in the instrument and that the possession of the defendant is wrongful and without legal right. It may be that in the operation and complete performance of the agreements illegal unfairness or results will develop. The effect of the clauses we have quoted, in form, preventing in such event the nullification of the entire instrument, may then come in question. Those clauses certainly do not, as claimed by the defendant, inoculate the entire instrument with illegality.

We deem it unnecessary to enter into a determination as to the exact meaning of each of the terms " lease," " concession," " lessee " and " concessionee " in the legislative mind in enacting the statute. It was a clear legislative intention to confer upon the commissioners, as the agents or representatives of the state, the full control of the entire property constituting the reservation, within the purposes of restoring, maintaining and developing the supply of water and its widespread distribution to and use by the public. The limitations of the control, generally speaking, were inability (a) to lessen or destroy the reservation by selling any land or interest acquired under section 2 of the statute, and (b) to interfere with or lessen the right of the people to free access, under reasonable regulations, to the reservation and the free drinking upon it of the waters. It was a clear legislative intention

to empower the commissioners, subject to the statutory limitations, to let outside or third parties have the rights or privileges of using for the purposes .contemplated by and within the intendment any part of the land, waters or gases. The using of the terms referred to, or either of them, does not fix and dominate the legislative intendment.

A claim of the defendant is that the instrument is an ordinary contract of employment of the plaintiff, with compensation to it, to carry on for the state the bottling and sale of the waters with *license* to enter for the purposes of the contract, and that the state may refuse to proceed under the contract and such refusal would. automatically revoke the license; the state would then be liable for breach of contract to be prosecuted in the Court of Claims; but it would still be able to control the possession of its property, either by direct action of the legislature, or indirectly through the powers delegated to its authorized agent, the conservation commissioner. The claim is ill-founded. The rights granted the plaintiff were not revocable by and at the will of the state or its representatives. Those rights invested the plaintiff with an interest of some character in the lands of the reservation. This much is manifest. A license is revocable and carries no interest in the land in or over which it is to be enjoyed. It may become irrevocable through the expenditure of money by the licensee and, when executed, will prevent the owner of the land from maintaining an action of trespass for the acts done under it. The rights of the plaintiff here were not temporary, were not revocable and were not devoid of an interest in the land. In virtue of them the plaintiff not only was authorized, but was obligated, to appropriate and take away and sell the waters, to go upon, possess and use the lands as prescribed and to use and maintain and, if required, erect upon the land buildings and structures, throughout the fixed period. The right of taking profits in another's land is commonly called *profits a prendre*. It is in the nature

of an easement in the land; it is, however, something
more. One of the distinguishing features of a pure
easement is the absence of all right to participate in the
profits of the soil charged with it; the existence of a
privilege without profit. (*Wolfe* v. *Frost*, 4 Sandf.
Ch. 72, 77; *Greenwood Lake & Port J. R. R. Co.* v. *New
York & Greenwood L. R. R. Co.*, 134 N. Y. 435.) The
distinguishing feature of *profit a prendre* is the right to
appropriate and take from the land charged with it a
part of the soil or product of it, in which there is supposable
value. (*Pierce* v. *Keator*, 70 N. Y. 419.) Each right
requires the use of the land in which it exists, and to use
is to possess. Each, therefore, involves possession,
though the title and broader right of possession is in
another. Each implies such estate in the land as may
be necessary to the enjoyment of the right. Each is
incorporeal real property. Incorporeal real property is
defined to be a right issuing out of or annexed to a thing
corporeal, and consists of the right to have some part
only of the produce or benefit of the corporeal property,
or to exercise a right or have an easement or privilege or
advantage over or out of it. (*Nellis* v. *Munson*, 108
N. Y. 453; *Long Island R. R. Co.* v. *Garvey*, 159 N. Y.
334.) Each may be and commonly is attached to or
exists for the benefit of land (known as the dominant
tenement) other than that charged, known as the servient
tenement. If held by reason of the ownership or pos-
session of the dominant tenement it is regarded and
defined as appurtenant to such dominant tenement,
and is, of course, assignable and inheritable. (*Nellis* v.
*Munson*, 108 N. Y. 453.) Each may, however, be held
and enjoyed by an individual or party, distinct from any
ownership of any lands or dominant tenement, and is
then regarded as held and enjoyed in gross. A pure
easement in gross is, generally speaking, neither assign-
able nor inheritable and is personal to the grantee.
While an easement for a specified period always implies

an interest in the land in or over which it is to be enjoyed, the right of *profit a prendre*, if it belongs in gross to a party, takes the character of an estate in the land itself, rather than that of a proper easement in or out of the same. (*Post* v. *Pearsall*, 22 Wend. 425.) This rule, arbitrarily established, perhaps, to accomplish the intent of parties and justice, radically differs from that concerning an ordinary easement in gross. The right of *profit a prendre* in gross is assignable and inheritable. The power to grant to a party by apt language the right, appurtenant or in gross, to enjoy, possess and use for profit the land of the grantor is undoubted. It includes such rights as those of severing and taking grass, clay, sand or ice, of pasturing live stock, of taking oil or minerals from the soil, or taking water that has been artificially accumulated, as in wells or cisterns, of cutting ice and of hunting and fishing. Such is the law of this jurisdiction. In England and some of our states, it seems to be established that a pure easement can only be held as appurtenant to a dominant tenement, and that an easement in gross amounts to no more than a mere license. In the instant case the rights of the plaintiff were not granted in favor of any dominant tenement or enjoyed by reason of holding any other estate. The instrument did not transfer the land, but gave to the plaintiff an incorporeal hereditament, a right to take upon the land salable water, and, as incidental and auxiliary, the right to use buildings, machinery and other property.

We are not required to determine whether or not the right to the plaintiff of taking and appropriating the waters of the springs constituted an easement proper or a *profit a prendre*. It has been held that the waters of a spring are not a part of the soil or a product of the soil and the taking of them is not a *profit a prendre*. It may well be doubted that the holding is applicable to the conditions existing in the instant case. There is, however,

in judicial opinion no dissent to the proposition that the right of one taking water from a spring in the land of another is an easement, an interest in the land and an incorporeal hereditament. (Washburn's Easements & Servitudes, pp. 13, 118; *Goodrich* v. *Burbank*, 94 Mass. 459; *Manderbach* v. *Bethany Orphans' Home*, 109 Penn. St. 231; *Diffendal* v. *Virginia Midland R. R. Co.*, 86 Va. 459; *Race* v. *Ward*, 4 Ellis & B. 702; *Manning* v. *Wasdale*, 5 Adolphus & Ellis, 758; *Tyler* v. *Bennett*, 5 Adolphus & Ellis, 377; *Hankey* v. *Clark*, 110 Mass. 262; *Borst* v. *Empie*, 5 N. Y. 33.) The parties expressed in the writing their contemplation and intention that the rights granted by the state were, in fact, granted to the plaintiff. The rule of non-assignability of an easement in gross is not invocable to the defendant.

The instrument granted to the plaintiff complete and perfect rights of use and possession as described in it. It was operative and effective as a grant and vested in the plaintiff an unconditional interest or estate in the land. It was an agreement on the part of the state that the plaintiff should have and retain the real property — an incorporeal hereditament. A present conveyance of real property is an executed contract. An agreement to sell and convey is an executory contract. (*Farrington* v. *Tennessee*, 95 U. S. 679; *Neves* v. *Scott*, 9 How. [U. S.] 196, 211.) In *Fletcher* v. *Peck* (6 Cranch, 87, 137) Chief Justice MARSHALL said: " A grant, in its own nature, amounts to an extinguishment of the right of the grantor, and implies a contract not to reassert that right. A party is, therefore, always estopped by his own grant. Since, then, in fact, a grant is a contract executed, the obligation of which still continues; and since the Constitution uses the general term contract, without distinguishing between those which are executory and those which are executed, it must be construed to comprehend the latter as well as the former. A law annulling conveyances between individuals, and declaring that the grantors

should stand seized of their former estates, notwith-
standing those grants, would be as repugnant to the
Constitution, as a law discharging the vendors of property
from the obligation of executing their contracts by
conveyance. It would be strange if a contract to convey
was secured by the Constitution, while an absolute
conveyance remained unprotected." This language, as
accurate as it is unambiguous, was used in reference to
a grant of land by the governor of a state under a legis-
lative act. The fact that the grantee is to perform in
the future prescribed acts connected with or concerning
the property conveyed does not transmute the grant.
The instrument before us was a grant — a contract
executed — because it conveyed to the plaintiff the com-
plete and perfect right to enter into, possess and enjoy
the real property described in it. The state, or the legis-
lature, of course, could not repeal or abrogate the grant of
real property made by it. (*Danolds* v. *State of N. Y.*,
89 N. Y. 36, 44; *People ex rel. Graves* v. *Sohmer*, 207
N. Y. 450.) The enactment of chapter 204 of the Laws
of 1917, authorizing (among other things) the conservation
commission to bottle and sell the surplus waters of the
springs and making an appropriation for that purpose
did not, therefore, affect the right of the plaintiff to the
possession of the property in accordance with the grant.
The act is weightless in determining the authority of the
commissioners, who, for the state, executed the grant,
and the rights of the plaintiff, the grantee of the
state. The purpose and the act of the state, under
the instrument of March, 1916, was to grant an
easement proper or in the nature of a *profit a prendre*
and rights and privileges incidental and auxiliary.
The grant would not support an action of ejectment by
the plaintiff which had not been wrongfully disseised of
an actual possession of corporeal property. (*Child* v.
*Chappell*, 9 N. Y. 246; *Woodhull* v. *Rosenthal*, 61 N. Y.
382.) The action in equity for injunctive relief from the

possession or an interference by the defendant is the proper remedy. An injunction is the usual remedy invoked by the owner of a legal easement to remove an obstacle to its possession and enjoyment. The fact that there is neither privity of estate nor privity of contract between the owner and the aggressor is immaterial. (*Moore* v. *Brown,* 139 N. Y. 127; *Parker* v. *Nightingale,* 6 Allen, 341; *Hills* v. *Miller,* 3 Paige, 254.)

The acts of the defendant in preventing, by his anterior use and possession, the plaintiff entering into the rights and privileges granted it by the instrument were unauthorized and unlawful and constituted the defendant as an individual the wrongdoer. In them the defendant ceased to be a public officer and became a private wrongdoer. Chapter 204 of the Laws of 1917, in so far as it purported or was intended to adopt or confirm those acts, or violate the grant of the state to the plaintiff, destroyed property rights protected by the Constitution and was ineffective and immaterial. The acts of the defendant, although done in the name of himself as the conservation commission, or done by him while assuming to act as the conservation commissioner, were not and could not become lawful or regain to the state the property it had conveyed. An unconstitutional or void statute is not a law; it compels no one, binds no one, protects no one. Those acts bar the plaintiff from possessing and exercising its incorporeal rights and a function of a court of equity is to remove them. (*Litchfield* v. *Bond,* 186 N. Y. 66; *Tindal* v. *Wesley,* 167 U. S. 204.)

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and the Appellate Division.

HISCOCK, Ch. J., CHASE, CARDOZO, POUND and ANDREWS, JJ., concur; CRANE, J., dissents.

Judgment reversed, etc.