CARLTON CRAWFORD et al., Plaintiffs, *v.* STELLA R. LESCO, Defendant.

Supreme Court, Equity Term, Monroe County, January 18, 1955.

*Burton D. Tanenbaum* for plaintiffs.

*Charles E. Steinberg* for defendant.

ROBERTS, J. Plaintiffs are the owners of lot No. 4 of the Ridge Road Tract located at the corner of Ridge Road West and Newton Road in the town of Greece, Monroe County, New York. Defendant is the owner of lot No. 555 which adjoins plaintiffs' premises. A commercial building is located on plaintiffs' lot containing various toilets and sinks, the disposal from which flows into a septic tank which is also located on plaintiffs' lot. The overflow from this septic tank was formerly disposed of by a leach bed located on defendant's lot. Plaintiffs in this action seek to permanently enjoin the defendant from interfering with the use of such leach bed for the disposal of sewage from plaintiffs' premises. Defendant by her counterclaim seeks to permanently enjoin the plaintiffs from discharging sewage from their premises onto defendant's property.

A corporation known as Twenty-Twenty Enterprise, Inc., of which the defendant and her husband, Peter B. Lesco, Jr., were the sole stockholders, was at one time the owner both of lot No. 4 and of lot No. 555. Lot No. 4 was acquired by the corporation on October 6, 1948, and lot No. 555 on August 3, 1950.

In the winter of 1951, and spring of 1952, the corporate owner of the two lots erected a building on lot No. 4. There was no sanitary sewer system in the town of Greece where the lots were located and the only feasible method of disposing of the sewage from a building of the size and type under construction was through the use of a septic tank and a leach bed. There was insufficient room on lot No. 4 for a leach bed of the size which was required and the corporate owner decided to locate it on lot No. 555. In its application for a plumbing permit to the Town of Greece the owner specified the sewage disposal

plan contemplated, which included a leach bed to be located on the adjoining lot No. 555. This plan of sewage disposal was approved by the town and a septic tank was constructed on lot No. 4, and in February or March of 1952, the leach bed was constructed on lot No. 555. The sewage disposal system was completed and put in use the latter part of March, 1952.

In December, 1951, the corporate owner of the lots procured a mortgage loan for the apparent purpose of financing the erection of the building on lot No. 4. This mortgage ran to a corporation known as 42 East Avenue, Inc. and was dated December 5, 1951, and recorded December 10, 1951. The mortgage covered only lot No. 4 and conveyed said lot " together with all the appurtenances ". This mortgage was subsequently foreclosed and the plaintiffs and two of their former partners acquired title to lot No. 4 on November 10, 1952, under a referee's deed. Two of the partners subsequently and by deeds recorded April 12, 1954, conveyed their interest to the plaintiffs, who are now the sole owners of said lot No. 4.

The partners who acquired title on the foreclosure sale had been tenants of the building operating a restaurant therein since its completion. Negotiations for the lease were entered into in the winter of 1951, and the restaurant operations were commenced in March of 1952, and have continued since that time. The plaintiffs were two of the original partners and later acquired the entire partnership business. They were therefore at all times fully familiar with the sewage disposal system including the leach bed on the adjoining lot.

By deed dated October 1, 1952, and recorded October 17, 1952, the corporate owner of lot No. 555 conveyed said lot to William G. Easton either in payment or as security for certain attorneys' fees which were then owing. The grantee had been acting as attorney for the corporation and knew of the presence of the leach bed on lot No. 555 and knew that it serviced lot No. 4. This conveyance of lot No. 555 was made prior to the foreclosure sale of lot No. 4. Mr. Easton subsequently conveyed lot No. 555 to the defendant, who knew of the existence of the leach bed and who was one of the stockholders and officers of Twenty-Twenty Enterprise, Inc., the corporation which had constructed it.

After the foreclosure sale some negotiations were undertaken first by Mr. Easton and later by the defendant in an attempt to sell lot No. 555 to the purchasers of lot No. 4. No sale was made and apparently after these negotiations had fallen through and sometime in the fall of 1953, defendant claims she decided to

build a house on lot No. 555. About this time there was some digging on lot No. 555 which disconnected the leach bed from the septic tank. Up until this time the leach bed had been continuously used for the disposal of the sewage from lot No. 4 and since the digging occurred, the sewage from the building on that lot has seeped out onto the surface of lot No. 555. As a result of this situation the plaintiffs here seek to enjoin the defendant from interfering with the leach bed for the disposal of sewage from lot No. 4, and defendant seeks to enjoin the plaintiffs from permitting sewage from lot No. 4 to discharge on lot No. 555.

From the foregoing facts it is clear that all of the elements of an implied easement are here present; (1) the estates now in the hands of different owners were formerly in one ownership; (2) while so held in one estate a use was created by the owner which made lot No. 555 subordinate or subservient to lot No. 4; (3) the use was fully known to the grantees of both lot No. 4 and lot No. 555 at and before they acquired title; and (4) it affected the value of lot No. 4 and was necessary to the reasonable use of that lot. (*Jacobson* v. *Luzon Lumber Co.,* 192 Misc. 183, affd. 276 App. Div. 787, affd. 300 N. Y. 697; *Heyman* v. *Biggs,* 223 N. Y. 118.) Had the plaintiffs here acquired their title through a deed from the former common owner, there would be no question as to their right to relief. Here, however, their title comes through a referee's deed following the foreclosure of a mortgage on lot No. 4, which mortgage was given and recorded prior to the construction of the leach bed. The question is presented as to whether or not a use created for the benefit of lot No. 4 enures to the benefit of a prior mortgagee and to owners whose title comes through a foreclosure of such mortgage.

The referee's deed by its terms and in general effect conveyed the entire estate of the mortgagee and the mortgagor as of the date the mortgage was made. (*Rector, etc. Christ P. E. Church* v. *Mack,* 93 N. Y. 488.) There are exceptions, however, to the general rule. One such exception relates to easements created after the making of the mortgage. Thus, a purchaser taking title through a referee's deed at a foreclosure sale acquires the benefit of an easement created after the making of the mortgage. This rule applies to easements by prescription (*Wojcieszak* v. *Michno,* 197 Misc. 350), to easements by agreement (*Stanislaus Water Co.* v. *Bachman,* 152 Cal. 716, 724), and to easements by implication created by a common owner which are necessary to the reasonable use and enjoyment of the prem-

ises (*Warner* v. *Grayson,* 200 U. S. 257; *Liberty Nat. Bank* v. *Lux,* 378 Ill. 329; *Hankey* v. *Clark,* 110 Mass. 262; *Cannon* v. *Boyd,* 73 Pa. 179; *Richmond* v. *Bennett,* 205 Pa. 470, 473).

Plaintiffs are entitled to judgment dismissing the counterclaim upon the merits and for a permanent injunction restraining the defendant, her agents, servants and employees from interfering with the use of the leach bed upon lot No. 555 for the purpose of disposing of sewage from lot No. 4, and further compelling the defendant to remove any obstruction now existing which prevents the use and enjoyment of the easement for the use of such leach bed, with costs.

Let judgment be entered in accordance with this decision.