EDWIN E. PETTY, Appellant, v. FIDELITY UNION TRUST COMPANY and Another, as Executors, etc., of EDWIN R. PETTY, Deceased, Respondents.*

Second Department, March 17, 1933.

* Affd., 262 N. Y. 690.

*Stephen Callaghan,* for the appellant.

*H. Herbert Romanoff* [*Joseph F. McCloy* with him on the brief], for the respondents.

DAVIS, J.  The plaintiff sought in this action to compel specific performance of a contract for purchase of certain lands; or, in the alternative, to recover the down payment.  The defendants, by a counterclaim, asked specific performance — but on the basis of a different form of description of the premises, asking reformation of the contract.  The defendants have judgment on their theory without reformation.

On November 23, 1923, Edwin R. Petty leased to his nephew, Edwin E. Petty, an unimproved tract of land in the town of Smithtown, Suffolk county.  It was stated that the tract contained " about thirty acres," and the description gave boundaries by the lands of others except that on the west it was in part bounded by the " Nissequogue Road."  The rental was nominal; and the nephew was given " the privilege to take and sell gravel and sand from the premises."  As the land seems to have had no value for cultivation, it was the evident purpose of the lessor to furnish his nephew gratuitously an opportunity to get into a business enterprise where by his own industry he could do something for his own support.  Evidently the nephew had not theretofore been successful or thrifty, for when the uncle died, on June 23, 1929, the nephew was owing him on a note about $2,000.

The lease also contained an option or " privilege " of purchase " at the sum of three hundred dollars per acre."  Very likely this was intended as a pleasant gesture, for the uncle must have known that his nephew was propertyless, in debt, and unable to pay rent for the land leased.

After the uncle died, the Fidelity Union Trust Company (the active executor, to whom alone reference will chiefly be made) gave notice that the lease would not be renewed in November, 1929, and that notice to it should be given if the nephew wished to exercise the option.  He replied that he wished to take up his

option " and apply my inheritance to the purchase price." He had been given a legacy of $5,000 in the will, which was subject to the deduction of the amount owing on his note.

There was long delay in preparing the final contract of sale, the reasons for which are unimportant. In the meantime it was necessary to fix the amount of the acreage to determine the purchase price. The nephew had a surveyor prepare a map. This map (called the Wells map) showed that the deeds to the uncle included lands west of the River road extending to the Nissequogue river. This small tract of land, containing perhaps a half acre, was not mentioned in the lease. The map showed the total acreage as 29.303. A copy of the map was in the hands of the executor as early as December 2, 1929. The latter had knowledge at that time concerning the boundaries and the acreage.

Disregarding the negotiations resulting in one contract that evidently was not signed, but at any rate was lost and abandoned, the parties signed a contract of sale dated January 12, 1932. It was known that there was question about the title, and both parties at one time or another had talked of " calling off the deal." The purchaser had been insisting that the small tract fronting on the river be included. The executor at last consented to sign a contract agreeing to convey the premises described by the original general boundaries (by the lands of other owners) but on the west being bounded in part by the river. The survey and map were referred to in fixing the acreage at 29.303. If the small part across the road had not been included, the acreage would have been incorrect. To this description, before execution, the executor added the words, " being the same premises which were leased to the purchaser by said Edwin R. Petty, deceased, by lease dated November 23, 1923." It was provided that $3,301.53, the balance left from the legacy, should be deemed paid on the purchase price. The sum of $1,189.37 was to be paid on the date of the delivery of the deed (which the executor should have known the purchaser was unable to pay) and a mortgage was to be given for the balance, amounting to $4,300. The executors were to deliver " the usual executors' deed so as to convey to the purchaser the fee simple of said premises free and clear of all encumbrances."

The matter came to a head on March 8, 1932, the time finally fixed for closing and delivery of the deed. The purchaser (plaintiff) objected to the title of that small part of the land west of the road and extending to the river. It is not disputed that the uncle had no valid title to that land, although it had been conveyed to him by his grantor. The defendant presented and tendered two executed deeds, one giving the boundaries in a general way as

bounded by the lands of others, but being bounded by the river on the west and containing 29.303 acres as determined by the Wells survey, and " being the same premises which were leased * * *." The other deed gave a description by metes and bounds " according to a survey made by Jesse W. Wells * * *." This also gave the acreage at 29.303. There was no reference to the lease in this deed. Of course the executor knew that without including the small tract next to the river there would not be the amount of acreage named.

The parties did not complete the sale. The purchaser stood on the ground that the title to the complete tract was defective. Doubtless he could not have made the payment required if title had been good. It seems apparent that he had exhausted his resources when he turned over the balance of his legacy. It is doubtful if his uncle would have pressed him under these circumstances. The executor had the legal right to insist that the nephew perform his contract as written, if good title could be conveyed. This suit was brought and the defendant then endeavored to perfect the title by getting quitclaim deeds to the small parcel in dispute. The trial court held that these efforts were unsuccessful and that the deeds obtained did not cure the defect.

On the trial the principal subject of controversy was the " intent " of the parties as to the lands to be conveyed. The learned trial court found that it was to embrace only the lands described in the lease. It was held that reformation was unnecessary for the reason that the intent was clear. We take a different view. The long-continued negotiations, resulting in the contract of January 12, 1932, based on and referring to the Wells survey, together with the tender of deeds at closing day containing descriptions running to the river, indicate that it was clearly in the mind of the executor that the purchaser desired to obtain and it was proposing to give title to the entire tract. Furthermore, the acreage was fixed by that survey and the executor exacted a price based on the acreage therein stated. On the trial the defendants offered no abatement in the purchase price on account of this small tract; and the whole acreage and total sum are carried into the judgment, although this small parcel is not to be conveyed to plaintiff. It is said to be valuable by furnishing a water outlet for the sand and gravel. These lands apparently have no value other than for the removal of those commodities. All this would seem to indicate a lack of equities on the part of the defendants.

The intent in contracts like these is to be found generally in their language. Sometimes the parties have given by their acts a practical interpretation of the meaning. We have stated above the

light in which the executor viewed the contract in respect to the lands to be conveyed, as determined both by its language and the description in the deeds tendered. Where there is doubt the court may resort to well-established legal principles. Generally speaking, a particular description in a deed or other instrument will prevail over one general in its character, and if necessary the latter will be rejected as surplusage (*Zink* v. *McManus*, 49 Hun, 583; affd., 121 N. Y. 259; *Clarke Estate* v. *City of New York*, 165 App. Div. 873, 876) except in cases where there is some obvious mistake or clerical error. (*Ousby* v. *Jones*, 73 N. Y. 621; *Bernstein* v. *Nealis*, 144 id. 347; *Matter of City of New York* [*Mott Avenue*], 230 App. Div. 307.) Moreover, any doubt or ambiguity will be construed most strongly against the grantor; and the deed will be deemed to convey all the interest in lands the grantor has, unless the intent is clear that the contrary is contemplated. (*Blackman* v. *Striker*, 142 N. Y. 555, 560; *Van Winkle* v. *Van Winkle*, 184 id. 193, 209.) We cannot believe that the executor had in mind the reservation of this small parcel when the contract was made, for it would have no value except in connection with the other land.

We reach the conclusion that the judgment should be reversed on the law and the facts, with costs, and that judgment should be rendered in favor of plaintiff for the cancellation of the contract and recovery of down payment, with interest and costs.

LAZANSKY, P. J., HAGARTY, CARSWELL and SCUDDER, JJ., concur.

Judgment dismissing complaint and granting judgment in favor of defendants on their counterclaim reversed on the law and the facts, with costs, and judgment rendered in favor of plaintiff for the cancellation of the contract and the recovery of the down payment, with interest and costs. Findings inconsistent herewith are reversed and new findings will be made. Settle order on notice.