UNITED STATES of America, Petitioner-Plaintiff-Appellee,

v.

63.04, ACRES OF LAND, more or less, situate at LIDO BEACH, near the City of Long Beach, TOWN OF HEMPSTEAD, COUNTY OF NASSAU, STATE OF NEW YORK, and Irving A. Nemerov et al., Defendants-Appellants,

Town of Hempstead, Defendant-Appellee.

No. 278, Docket 24233.

United States Court of Appeals Second Circuit.

Argued March 12, 1957.

Decided June 3, 1957.

Perry W. Morton, Asst. Atty. Gen., Harry T. Dolan, Sp. Asst. to Atty. Gen., Roger P. Marquis and Elizabeth Dudley, Attorneys, Department of Justice, Washington, D. C., for petitioner-plaintiff-appellee.

Nathan D. Shapiro, Brooklyn, N. Y., for Bessie N. Shapiro, Samuel Kresberg and Benjamin Kresberg.

Jacob Patent, Brooklyn, N. Y., for Gilbert D. Paisner et al.

Leonard R. Fisher, New York City, for Irving Nemerov.

Paul Windels, New York City, and Joseph Margolis, Brooklyn, N. Y., of counsel, for defendants-appellants.

Isidor E. Leinwand, New York City, for Sam H. Lipson, Trustee in Bankruptcy for William T. Nemerov.

John A. Morhous, Hempstead, N. Y., and B. Thomas Pantano, for defendant-appellee Town of Hempstead.

Before HINCKS, STEWART and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

█ The defendants in this condemnation proceeding appeal from a judgment of the district court, sitting without a jury, which decreed that (1) the property condemned amounting to 58.26 acres [1] is to be valued at $3,000 an acre; (2) the severance damages for certain adjacent property to the east and west of the condemned lots are 50% of the value of that property; (3) defendants do not have title to certain other adjacent property to the north of the condemned lots called the "bulge" which extends to the Reynolds Channel on the north side of Long Beach Island. Defendants contend, *inter alia*, that evidence of a sale subsequent to the taking was improperly excluded from the valuation of the condemned property. We agree with this contention and reverse and remand for a new trial on that issue and any related recomputations for severance damages on the property to the east and west of the condemned land. We affirm the finding that the defendants did not have title to the bulge.

Defendants own lots A–101, A–102 and A–103 in Lido Beach, on Long Beach Island, in the Town of Hempstead, Nassau County, N. Y. The island is bounded on the north by Reynolds Channel and on the south by the Atlantic Ocean. From west to east it contains the four communities of Long Beach, Atlantic Beach, Lido Beach and Point Lookout. Defendants' property fronts on the north side of Lido Boulevard which runs west and east the length of the Island.

Atlantic Beach and Long Beach are thoroughly developed communities which, although at one time primarily summer communities, have recently become year-round communities with many costly residences. Point Lookout is developing along similar lines. The development of Lido Beach lagged far behind the other three because zoning restrictions south of the Boulevard blocked any substantial growth. In addition, there were cesspool and septic tank restrictions, a veterans' housing project which had fallen into disrepair, and poor police protection which permitted the beach to become a rendezvous for disorderly elements.

Restrictive zoning provisions on the land south of the Boulevard were lifted in the fall of 1953. Within about a year, six costly cabana clubs were built south of the Boulevard. The veterans' housing project was removed and replaced by a new grade and junior high school and a golf course was built. The cesspool restrictions were also removed. It is undisputed that property values south of the Boulevard rose substantially.

The land north of the Boulevard was zoned for residential use, but it required filling at considerable expense.[2] There

---

[1] Other property amounting to 4.8 acres was also taken but is not involved in this appeal. There appears to be a discrepancy of .02 acres but that is not relevant to the issues before us.

[2] Defendants' experts testified that it would cost $3,970 per acre to fill in Lot A–101, $4,650 per acre for Lot A–102, and $4,460 per acre for Lot A–103. The government's witness assessed the expenses of filling as follows: $10,000 per acre for Lot A–101, $10,500 per acre for Lot A–102, and $9,000 per acre for Lot A–103. The district court did not indicate which estimate it accepted; indeed, the opinion below did not indicate any of the subsidiary findings and conclusions on which the ultimate findings were based.

was testimony that the same condition had prevailed at Atlantic Beach and that many expensive homes had been constructed on filled-in land.

On July 2, 1954, the United States filed a notice that it was taking approximately 57.26 acres of the defendants' property north of the Boulevard—Lots A–101, A–102 and A–103. The declaration of taking was filed on December 20, 1954. The lots involved were not complete parcels since a triangular strip of seven acres to the southwest of Lot A–101 was not taken, and Lot A–103 was a corresponding triangle of 3.70 acres cut out of a parcel to the east of Lot A–102. However, defendants sought compensation not only for the property taken but also severance damages to their property to the east and west which was not taken but detrimentally affected. In addition, defendants claimed title to land immediately north of the condemned property extending to the Reynolds Channel and known as the "bulge," because of its shape. They sought severance damages for this property as well.

The government valued the condemned property at $2,500 per acre, with severance damages of 50% of the value of the property east and west of the condemned area. It denied that defendants had title to the "bulge" property. The Town of Hempstead intervened in the proceeding, and asserted title in the "bulge" against the defendants.

At the trial, the government's expert witness relied on five [3] sales of property north and south of the Boulevard to arrive at a value of $2,500 per acre.

The three sales to the south were as follows:

 1. 1949 option resulting in sale on March 21, 1952 at $2,800 per acre.

 2. April 20, 1950 at $3,000 per acre.

 3. January 5, 1954 at $12,200 per acre.

The two sales to the north were as follows:

 1. December 6, 1951 at $1,891 per acre.

 2. May 22, 1952 at $3,454 per acre.[4]

Defendants repeatedly attempted to introduce evidence of a sale at $11,000 per acre by the government of Lido Beach property north of the Boulevard and northwest of the condemned property.[5] Bids for this sale were solicited in July 1954 and apparently received until the sale was consummated on September 15. The evidence was offered for these purposes: (1) on direct examination, to show that the admittedly high property values south of Lido Boulevard "spilled over" to the northern property; (2) on cross-examination, to rebut the governmental witness's assertion that the cabana club development to the south, the golf course, and the school were detrimental to property values. The trial judge consistently excluded the evidence of the sale on the ground that the sale took place after the date of taking, July 2, 1954, and that he would not consider any sales after that date.

After the trial, the district judge found (1) that the value of the condemned property was $3,000 per acre, totalling $174,780 for the 58.26 acres; (2) that severance damages to the adjacent property east and west of the condemned lots were 50% of their value—$3,000 per acre—which amounted to $11,280 for 7.52 acres; and (3) that defendants did not have title to the bulge.

---

3. The government expert also considered a sixth sale made in December 1952, but did not include the price per acre in his computations because buildings were also involved in the sale.

4. At the trial, the five properties involved in these sales were referred to as Parcels V, VI, IV, I and II, respectively.

5. While the record does not indicate the exact location of this property, it does show that a golf course of 142 acres lies between the property sold by the government and the condemned property. Clearly the property involved in the September sale and the condemned property are situated near enough to be comparable insofar as location is concerned.

Defendants appeal all three findings, but two groups of them, Sam Lipson as trustee in bankruptcy for William T. Nemerov, and the Paisner appellants, do not appeal the severance damages on the adjacent territory east and west.

I. Value of the Condemned Property.

Defendants contend that the property is worth $12,000 an acre and that the district court should not have relied on the government's witness for he was far less qualified than the defendants' and his testimony was contrary to the weight of the evidence.

 It is apparent from the similarity between the court's figure of $3,000 and the government's figure of $2,500 that the court relied heavily on the government expert's testimony. Defendants attack his qualifications and argue that the district court should not have preferred his version to that of the defendants' witness. We cannot say it was error to rely on the government's witness insofar as his qualifications are concerned. That is a matter for the discretion of the trial court, Chapman v. United States, 10 Cir., 1948, 169 F.2d 641, and we do not think there was an abuse of discretion here as to that issue. Nor, on the record before us, can we say that the trial judge was clearly erroneous in his inferences from the record before him. See Phillips v. United States, 2 Cir., 1945, 148 F.2d 714. Nevertheless, a new trial is necessary for the trial court was in error in excluding the evidence of the September 1954 sale.

 Defendants' main contention is that the real estate market in Lido Beach was in a volatile state because of the lifting of the zoning restrictions which had taken place eight or more months before. It was undisputed that land values south of the Boulevard had risen sharply. Thus, defendants introduced evidence of three sales at prices of $12,200 an acre in January 1954, $18,000 an acre in February 1954, and $14,430 an acre in June 1954, as contrasted with sales at $3,000 an acre in April 1950 and $2,800 an acre in March 1952 referred to above. While the defendants contend that similar increases in value occurred in property north of the Boulevard, the government argues that the increase was confined to the southern property.

Whether the value of the property north of the Boulevard did increase substantially because of the rezoning to the south, and the degree of increase, are the most important issues in this case and we think it was wrong to exclude evidence of the September sale of property north of the Boulevard which bore directly on those issues.

 There is no absolute rule which precludes consideration of subsequent sales. The general rule is that evidence of "similar sales in the vicinity made at or about the same time" is to be the basis for the valuation and evidence of all such sales should generally be admissible, United States v. 5139.5 Acres of Land, etc., 4 Cir., 1952, 200 F.2d 659, 662; 1 Orgel, Valuation Under Eminent Domain, § 139 (2d Ed.1953), including subsequent sales. Cf. People ex rel. Horwitz v. Mitter, 1st Dept. 1944, 267 App. Div. 897, 47 N.Y.S.2d 168; People ex rel. Four Park Ave. Corp. v. Lilly, 1st Dept. 1942, 265 App.Div. 68, 37 N.Y.S.2d 733, 737–738. The generality of this rule is limited, however, by the consideration that a condemnation itself may increase prices and the government should not have to pay for such artificially inflated values. See International Paper Co. v. United States, 5 Cir., 1955, 227 F.2d 201. But that possibility does not produce a hard and fast exclusionary rule. In every case it is a question of judgment as to the extent of this danger and, particularly where a judge is sitting without a jury, it would seem the better practice to admit the evidence and then to weigh it having due regard for the danger of artificial inflation.

In this case the importance of the evidence far outweighs any possible danger of its representing artificially inflated values for as noted, evidence of the September sale is crucial to the basic issue of whether rezoning of the area south of

the Boulevard also raised values on the northern property. We therefore hold that it was an abuse of discretion not to admit and consider the evidence of the sale of government property north of the Boulevard in September on the issue of the value of the defendants' property, and reverse and remand for a new trial.

II. Severance Damages.

Defendants' only objection to the amount of severance damages to the property on the east and west of the condemned lots seems to be that the acreage was undervalued, and not to the finding of 50% deterioration. In any event, there is no reason to disturb that percentage estimate. However, since we remand for a new trial on the valuation of the condemned property, we likewise remand on the issue of severance damages to this territory for computation in accordance with the valuation arrived at.

III. Title to the "bulge" Area.

Defendants claim title to the "bulge" area on the basis of a general description in their deed from a corporation known as Lidoland, Inc., which refers to the northern boundary of the property as "North by Reynolds Channel." The contract of sale also referred to the northern boundary as the Reynolds Channel. However, the specific descriptions in all the deeds in the chain of title place the northern boundary on a line known as the bulkhead line, which is the southern boundary of the "bulge" property, and the district court seems to have accepted this as controlling. That conclusion is clearly correct, for the specific description by metes and bounds in the deed to Lidoland prevails over the general description, John Clark Estate v. City of New York, 2nd Dept. 1915, 165 App.Div. 873, 151 N.Y.S. 714, 716, 876. Hence Lidoland, Inc. could not convey the "bulge" to defendant Nemerov since it had no title to it. For the same reason, a corrective deed which it conveyed to Nemerov in 1955 purporting to correct a mistake in the earlier deed by conveying the "bulge" was ineffective since Lidoland, Inc. did not have the "bulge" to convey.

Affirmed as to the issue of title to the bulge; reversed and remanded for proceedings in accordance with the opinion as to the valuation of the condemned land and the severance damages of the property east and west of the condemned area.