Howard T. Hogan, J.
These consolidated actions are brought pursuant to article 15 of the Real Property Law to declare the rights of the parties to the ownership, use, possession or enjoyment of certain land in the city of Glen Cove.
Plaintiff alleges himself to be vested with an absolute and unincumbered title in fee to all the property described in his respective complaints. The individual defendants counterclaim for judgment that they are the sole owners of a described portion of said property by reason of actual continued occupation and adverse possession for more than 15 years last past. The defendant City of Glen Cove asks for judgment declaring that it has a right to maintain a highway along a portion of said premises terminating at Long Island Sound and that the public has the right ‘ ‘ to fish, bathe or boat thereon and therefrom without let or hindrance from the plaintiff.”
*436 Separated from the rest of the City of Glen Cove by West Pond and Dosoris Pond and the Long Island Sound, lie two so-called islands, one known variously as West Island or Dana’s Island, the other as Bast Island, or Morgan’s Island. West Island is connected to the mainland by a causeway which continues as a public road north along the island’s easterly side, then turns east at an approximate right angle and crosses a bridge over Dosoris Creek to East Island. If this road were to be extended northward beyond the bridge, along the east side of West Island, it would terminate at the high-water mark of Long Island Sound. The land that would be encompassed in such an extension, together with the adjoining land under water, is the subject of this litigation.
By deed dated April 6, 1896, one Charles A. Dana acquired title to “ ‘ West Island ’, containing about thirty-five acres of upland and salt meadow, being bound Northerly and Westerly by the Sound, Southerly and Easterly by the Creeh and Pond of the Dosoris Mill, together with all the rights, privileges and appurtenances thereunto appertaining and belonging.”
In 1896, he applied to the Commissioners of the Land Office of the State of New York for a grant of the absolute title in fee to the lands under water adjoining West Island on the east, north and west, in order that he might stop the erosion of his uplands by building jetties out into the water. A hearing was held at which the Town of Oyster Bay (the City of Glen Cove not then being incorporated) filed a remonstrance on the ground that it held title to these lands under water by virtue of a patent issued by Governor Andros in 1677. This objection was considered and rejected by the commissioners, and on June 29, 1896, a patent issued over the signature of the Governor of New York, granting these lands to Mr. Dana. Upon appeal, the question of title was passed upon and the decision of the .commissioners was upheld, the court finding title to have been in the State of New York, rather than in the Town of Oyster Bay (People ex rel. Underhill v. Saxton, 15 App. Div. 263, affd. 154 N. Y. 748).
Following the death of Charles A. Dana the island and lands under water were partitioned among his heirs, but by subsequent conveyances title to the whole was acquired by this plaintiff in or about 1950. He clams absolute ownership, unincumbered by easements or rights of any nature in the defendants. The following issues are presented: (1) In whom does title to the uplands and lands under water north of the bridge to East Island,' now lie? (2) Have defendants McLoughlin and Van No strand acquired any rights to any portion of *437 said lands by prescription? (3) What rights in said lands, if any, are possessed by the City of Glen Cove, through dedication or otherwise ? and (4) Has the public at large acquired any rights therein, and if so, what is the extent of such rights?
The court is satisfied that title to the lands under water in question vested in Charles A. Dana and those who took through him by virtue of the patent issued to him by the State of New York in 1896. The decision of the Court of Appeals in People ex rel. Underhill v. Saxton (supra) is conclusive on this point.
Although the deed description of Dana’s title to the upland recited that it was bound on the north and west by the Sound, and on the south and east by the “ Creek ” and Pond of Dosoris Mill, his heirs, apparently by reason of the subsequent partition of the island, resorted to metes and bounds descriptions of their various interests. When the plaintiff acquired the eastern portion of the island, his deed described the easterly line of the upland by metes and bounds, rather than as the Creek and Pond of Dosoris Mill. The line thus described does not coincide with the present high-water mark of the aforesaid Creek or channel, although the deed purports to convey also ‘ ‘ all right, title and interest of the parties of the first part in and to a parcel of land adjoining premises above described lying under the waters of Long Island Sound, being a portion of the land granted by the People of the State of New York to Charles A. Dana, now deceased.”
There was testimony that on the occasions of extremely high tides the water does reach individual points along the upland line established by courses and distances in plaintiff’s deed, but it is certain that such description of the upland does not effect a complete closure between it and the lands under water, despite the use of the descriptive word “ adjoining ”. Perhaps this may be the result of a gradual shifting of the bed of the channel, or an accretion to the upland. Whatever the cause of the present discrepancy, the rule to be applied is that “ Calls for natural objects will control calls for metes and bounds in. case of a conflict ” (11 C. J. S., Boundaries, § 50, p. 605; Clark on Surveying and Boundaries [2d ed.], § 514). Since the expressed intent of the grantor in plaintiff’s deed is that the upland and lands under water being conveyed adjoin each other, there could be no reservation of any land between the mean high-water mark of the channel and the land attempted to be described by distances and courses. The court concludes, therefore, that the plaintiff has title to all the lands in suit.
*438 The claims of the individual defendants arise from the allegations that McLoughlin’s father (now deceased) and Van Nostrand for many years swam, boated and fished from that part of West Island between the bridge over the channel to East Island and Long Island Sound, and, together with others, maintained shacks and kept rowboats there. They also parked their automobiles and, from time to time, repaired a bulkhead along the west bank of the channel. The extent of this bulkhead appears from a photograph (defendants’ exhibit J-8) identified by the witness Van No strand. McLoughlin did not testify.
On March 31, 1955, both individual defendants executed a deed of all of their right, title and interest in and to a strip of land bounded on the south by the south end of the bulkhead, on the east by Dosoris Creek, on the north by Long Island Sound, and on the west “by the west line of Dana’s Island Highway ” (a prolongation of the road leading from the causeway from the mainland to the bridge to East Island being roughly the upland in dispute).
When the witness Van Nostrand was asked upon direct examination: “Were you still occupying that shack at the time you executed that deed?”, he replied: “Yes. How can you deed over something we didn’t own? We didn’t own it. We just signed it over so the City can take them down because Mrs. Morgan complained it was an eyesore to her tenant up on the hill * * * We didn’t live there.”
If Van Nostrand and McLoughlin’s father had acquired any prescriptive right in the premises by such use over a long period of time it was no more than a pure easement in gross, in view of the repudiation of a claim of ownership, and was not assignable or inheritable (Saratoga State Waters Corp. v. Pratt, 227 N. Y. 429, 443; Antonopulos v. Postal Tel. Cable Co., 261 App. Div. 564). Hence, the City of Glen "Cove acquired nothing by the deed from the individual defendants, nor did McLoughlin inherit anything at the death of his father. If Van Nostrand ever had any rights to the use of this land, he still possesses them. Such rights would terminate at his death unless abandoned or released sooner.
The City of Glen Cove bases its claim upon the following allegations: (1) On September 9, 1861, the commissioners of highways of the Town of Oyster Bay described and entered in its Highway Book a roadway running, among other courses and distances, northerly from the bridge to East Island to Long Island Sound, over the land in dispute; (2) On March 23, 1907, this roadway was resurveyed and laid out by the Town of *439 Oyster Bay so that it would run from the end of the causeway to the mainland, along the margin of Dosoris Creek and Pond northerly to the Sound; (3) “ That thereafter, and from time to time * * * the said roadway was improved hy the building
of shoulders, bulkheads, paving and lighting, and the development of parking areas and a public beach for the mooring and launching of boats and other commercial and recreational uses,” and (4) that “ The roadway so laid out and improved has been ever since regularly and continuously travelled and used by the public as a highway and has been worked, used, improved, maintained and kept in repair by the authorities of the Town of Oyster Bay and the City of Glen Cove, having jurisdiction of such highway.”
The burden of proving such easements or prescriptive rights rests upon their proponents (Zeiger v. Interborough R. T. Co., 254 App. Div. 908; Srour v. Johnson, 91 N. Y. S. 2d 167). It has been found that title to the upland lay in Charles A. Dana and that the lands under water were conclusively determined to be owned by the State of New York up to the date of 1896, at which time they were lawfully granted to Charles A. Dana. The claim of ownership by the Town of Oyster Bay was considered and rejected (People ex rel. Underhill v. Saxton, 15 App. Div. 263, affd. 154 N. Y. 748, supra). The map offered by Mr. Dana to supplement his petition clearly showed much of the subject property to have been land under water. Further, a United States Topographic Survey, dated 1837 also shows that all, or the greater part of it was then under water. If the 1861 resolution of the highway commissioners included this land under water within the boundaries of the road (no map based upon this resolution has been produced) it was ineffectual, since title to it was actually in the State continuously until 1896. The Commissioners of the Land Office confirmed this by granting such land to Mr. Dana, an act inconsistent with the alleged act of the commissioners of highways of the Town of Oyster Bay.
When the lines of this purported highway were ordered by the highway commissioners to be resurveyed in 1907, the survey clearly showed the greater portion of its area, commencing just north of the bridge to Bast Island, still to be below the mean high-water line.
In 1911, the Board of Supervisors of Nassau County, by resolution, designated certain public highways in the town of Oyster Bay as “County Roads ”, including among them “Lower Dosoris Avenue in the Village of Glen Cove from the end of the macadam at Woolsey Private Burial ground as far as the *440 private bridge leading to the residence of J. P. Morgan, Jr., (on East Island).” The survey which was made pursuant thereto also represented a road existing on West Island between the north side of said private beach and the Sound, but does not indicate the mean high-water line.
In 1913, the supervisors adopted a similar resolution, and this time the accompanying survey showed no road extending north of the bridge, but indicated the high-water line cutting off the road a point just beyond the bridge. Casting further doubt on the physical existence of a road within six years of the adoption of the resolution of 1907, are the following: Plaintiff’s witness Richardson testified without contradiction that from 1912 to 1916, the road ended 20 or 30 feet north of the bridge and beyond it was no more than a ridge of sand and gravel. A United States Coast and Geodetic Survey, compiled from air photos taken in 1933, including both public and private roads in the area, shows no road north of the bridge. A “Revised Building Zone Map of the City of Glen Cove ” accompanying the Building Zone Ordinance of 1953 shows the road terminating a few feet north of the bridge. The map of the City of Glen Cove, revised in 1953, apparently including all public roads, likewise shows a “Dana’s Island Highway” ending just north of the bridge.
Although defendant’s witness Stanco, a former city official, described certain seasonal repairs which to his knowledge were made to the purported road since 1934, no city or town records were introduced to show any expenditure for the improvement or maintenance of a road north of the bridge to East Island, nor any record of time or materials devoted to it.
Neither did the city produce a single witness who had actually worked on the road. The court, with the consent of the parties, visited the site. It found that at some time in the past, a portion of the area, roughly half-way from the bridge to the Sound, had been paved by someone, but there was absolutely no visible evidence that any attempt at maintenance had been undertaken in recent years. The paved area is presently virtually impassible because of many large, deep holes. Beyond it there is bare sand extending north to the Sound.
Nor can the fact that the city occasionally contributed fill to brace the bulkhead at the request of the individuals who had built it, be construed as an intent to create or maintain a public highway. Policing the area, or posting it with signs directed to the public are also in themselves insufficient to constitute it a “ public highway ” (People v. Brooklyn & Queens Tr. Corp., 273 N. Y. 394, 399).
*441 Upon this record, the defendant (City) has not sustained the burden of proving that the purported highway had been opened and worked within six years after a dedication to public use (Highway Law, § 205; formerly § 234) or that it was maintained and repaired by the town or city to the extent necessary to invest it with the character of a public highway by prescription.
Although there is ample proof that this area has been used for considerably more than 20 years by the general public as a road or passageway to the waters of Dosoris Creek and the Sound, plaintiff, in fact making no attempt to controvert this, the law is well settled that ‘ naked user by the public, whether the theory be dedication or prescription, is not enough. It must aI‘so appear that the road was kept in repair or taken in charge and adopted by the public authorities during the period of time in question.” (De Haan v. Broad Hollow Estates, 3 AD 2d 848.) This rests on the broad principle that “ the unorganized public cannot acquire rights by prescription, since in such a case there is no grantee capable of taking under the presumed grant ”. (28 C. J. S., Easements, § 8; Cobb v. Avery, 75 N. Y. S. 2d 803, 805.)
As stated above, the proof here presented was insufficient to establish that the defendant city or its predecessor kept this purported road in repair or took it in charge.
The individual rights of the present owners of the lockers shown in the aforesaid defendants’ exhibit J-8, and of those who moor or beach their boats on the area in question, are not presently before the court.
The foregoing are the facts found by the court and constitute its decision as required by section 440 of the Civil Practice Act.
Submit judgment on notice.