Arthur M. Cromarty, J.
Plaintiff Claudio and the third-party defendant Greenport Realty Management Co., Inc. move for summary judgment. Other third-party defendants have joined in the motion. The motions are granted.
The action was brought by plaintiff Claudio for a determination of a claim allegedly made by the Village of Greenport *372 adverse to his title to certain land under Avater of Peconic Bay. In its ansAA’er, the village has set forth a series of allegations described as an affirmative defense and counterclaim against Claudio .and has interposed a third-party complaint against the named third-party defendants. By the counterclaim and third-party complaint, the village asks the court to declare and confirm its rights and the rights of the public; to declare the rights of the third-party defendants as subject to, subordinate to and of no force and effect as against the rights of the. village and the public; to declare the grants of land under Avater and the subsequent conveyances of such grants to be invalid.
There are issues of fact raised in the papers, but they are not material to the controversy. The essential facts are not in dispute.
Plaintiff claims title to a Avharf in G-reenport Harbor. His chain of title begins Avith chapter 335 of the Laws of 1954. By that enactment the New York State Legislature authorized, empowered and directed the Commissioners of the Land Office to convey the subject premises to plaintiff’s predecessor in title, G-reenport Wharf Company. Pursuant to that authority, the Commissioners issued their letters patent to the G-reenport Wharf Company. Such letters were recorded in the office of the Clerk of Suffolk County on July 14, 1954. Two years later, G-reenport Wharf Company conveyed to plaintiff, plaintiff conveyed to Greenport Realty Management Co., Inc. and, finally, by deed dated November 19, 1958 Greenport Realty reconveyed to plaintiff. In December, 1964, plaintiff placed barricades on the premises ‘ ‘ to preserve the OAvners ’ rights therein. ’ ’ The village caused the barricades to be removed Thus was instituted the controversy now before the court.
The village claims that plaintiff acquired no title from the grant because the statute authorizing it is unconstitutional.
‘1 It has long been a firmly settled rule of constitutional law that one may attack the constitutionality of a statute only if, when and to the extent that his rights are affected by it; that in so attacking he is not to be regarded as his brother’s keeper, and may not be heard to champion any right but his own.” (Thompson v. Wallin, 276 App. Div. 463, 466; Bull v. Stichman, 273 App. Div. 311; Kipp v. Incorporated Vil. of Ardsley, 13 AD 2d 1012.) That rule has been applied to municipal officials as well as to private citizens. (Matter of Bond & Mtge. Guar. Co., 249 App. Div. 25, affd. 274 N. Y. 598.)
In pleading its counterclaim the village does not spell out precisely what right it is seeking to uphold or to what extent *373 or in what manner it is affected by the statute. Paragraph 5 of the ansAver alleges that the village ‘£ at all times since April 8, 1838 Avas and still is entitled to the public use and benefit and property rights in and to ” the premises claimed by plaintiff. There is no factual clarification of that language. Nowhere in the pleadings are the “ property rights ” claimed by the village defined. However, the affidavit of counsel and his brief, both submitted in opposition to the motion, shed light on the village’s position. On page 2 of the affidavit is said: ‘1 The Village of Greenport asserts that there are public rights in and to the premises herein.” In his brief counsel for the village describes the village pleading as asserting ‘1 that there are public rights of the Village of Greenport and the public as a whole in and to the said land under water ’ ’. Finally, the brief defines the £ ‘ position of the Village of Greenport ’ ’ in this language: £ ‘ The Village has not asserted that it is the
OAvner of title in the land under water. The Village does however assert its public right to the use and benefit of the land under Avater.” That language clearly demonstrates that the village is not claiming any right of its own, but is purporting only to protect some right of the general public. Under the cases' cited above, the power of the village to test the constitutionality of the statute is doubtful.
However, plaintiff, realizing that the Aralidity of his grant must eventually be resolved, has consented that this court determine the issue of constitutionality in this action.
The village concedes that title to lands under water of Peconic Bay adjacent to the Toato of Southold is in the State of Nbav York in trust for the people of the State. (Town of Southold v. Parks, 41 Misc. 456, affd. 97 App. Div. 636, affd. 183 N. Y. 513.) By article 6 of the Public Lands Law, power is given to the Commissioners of the Land Office to make grants to State land only to the OAvners of land adjacent to land under water. The court agrees insofar as the powers of the Commissioners under the statute are concerned. Their power is restricted. Without further legislative authority they may only convey to an adjacent upland OAvner. However, Avith respect to the land in question they were given the necessary power. The same body which conferred the limited authority extended that authority by empowering the Commissioners through chapter 335 of the Laws of 1954 to specifically make the grant to the Wharf Company. The court perceives no wrong in that legislative process. By the Public Lands Law £ £ the commissioners of the land office *374 are restricted, in grants made by them * * * yet there is no such restraint upon the powers of the state, as exercised through the legislature. It is lawful for the state to make the grant to others than the adjacent proprietor.” (People v. Canal Appraisers, 33 N. Y. 461, 467.)
The initial proposition which must be accepted is that the State may properly convey its lands to private persons or corporations for some public purpose or some reasonable use which may fairly be said to be for the public benefit (Gould v. Hudson Riv. R. R. Co., 6 N. Y. 522; Saunders v. New York Cent, & Hudson Riv. R. R. Co., 144 N. Y. 75; Rumsey v. New York & New England R. R. Co., 130 N. Y. 88) except when the grant is too extensive in area or control. (Marba Sea Bay Corp. v. Clinton St. Realty Corp. 272 N. Y. 292; Matter of Long Sault Development Co., 212 N. Y. 1; Coxe v. State, 144 N. Y. 396.) But even these exceptional cases restate the general concept that the State has the power to convey its lands. Assuming that power in the first instance, there is no basis, either in statute, judicial authority or reason, to distinguish between adjacent proprietors and others or to bestow a benefit upon a class of property owners simply because of their geographical advantage. Thus, in the court’s opinion the validity of a grant does not depend on the identity of the grantee, but on its purpose and the degree to which public interest will be impaired by its extent. There is no claim that the extent of the grant requires condemnation of it or that the wharf itself interferes with navigation and commerce on the bay or that the wharfage and its attendant facilities are not beneficial to the public.
The village makes the point that it never consented to the grant. On February 9, 1954, the Village Clerk wrote to the Governor expressing the Village Board’s disapproval with the bill as originally proposed. Thereafter, the proposal was amended to make the grant subject to any public or private rights to a landing on the easterly portion of the premises and the right of ingress or egress thereto. Upon being advised of such amendment, the Village Clerk again wrote to the Governor on February 26,1954 withdrawing its opposition. Although there is no proof that village consent was required, certainly its acquiescence expressed in the letter of February 26, 1954 is tantamount to consent and precludes it at this time from objecting on the theory that it did not consent to the grant.
The village also argues that the grant violates section 17 of article III of the State Constitution in that it confers an exclu *375 sive privilege or franchise. That prohibition does not apply to a grant of land when assented to by a two-thirds vote of the Legislature. (N. Y. Const., art. III, § 20; cf. First Constr. Co. of Brooklyn v. State of New York, 174 App. Div. 560, mod. on other grounds 221 N. Y. 295.) It is not disputed that chapter 335 of the Laws of 1954 was passed by the requisite vote.
The village refers to an earlier act, chapter 45 of the Laws of 1926, which revived and extended the corporate existence of the G-reenport Wharf Company, as of January 1, 1926 and bestowed upon it all the rights and privileges enjoyed by it prior to January 1, 1926. The corporate existence of the wharf company expired on January 1, 1926. The enactment was specifically intended to prevent a lapse in its life. The village claims that the 1926 act was not passed by the required two-thirds vote. (N. Y. Const., art. III, § 20.) This claim is based on a preliminary statement or headnote contained in the act showing that it was ‘ ‘ Passed, three-fifths being present. ’ ’ There is no proof beyond this headnote that the act was not validly passed. The reference to three fifths being present is to show the presence of a quorum. (N. Y. Const., art. III, § 23.) Unless positive proof to the contrary is offered, the court is bound by the strong presumption that a statute was validly enacted. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 16; McGrath v. Grout, 69 App. Div. 314, affd. 171 N. Y. 7.) In addition, the court’s own research discloses that this 1926 act passed the Assembly by a vote of 138 ayes to 0 noes and in the Senate received 40 affirmative votes, out of a total membership of 51. These votes clearly constitute the necessary two thirds.
In view of all of the foregoing the court concludes that the grant to the G-reenport Wharf Company was valid to convey the State’s title. This title is, however, subject to certain rights. Chapter 397 of the Laws of 1878, incorporating the G-reenport Wharf Company, prohibited widening of the wharf on its east side and specifically provided that the use of the wharf was subject to “the free use by the public of the village landing on the east side of their said wharf.” It was undoubtedly with this limitation in mind that the Legislature subjected the grant of 1954 ‘ ‘ to any public or private rights to a landing on the easterly portion of the premises ” and “ to the right of ingress and egress thereto.” The decree to be entered shall contain an appropriate provision subjecting plaintiff’s title to these rights.
Defendant makes much of a prescriptive right having been acquired by the public. How that alleged right developed is not *376 clear. The general principle is that the unorganized public cannot acquire rights by prescription through use alone. (Morgan v. City of Glen Cove 6 Misc 2d 434, affd. 6 A D 2d 704, affd. 5 N Y 2d 1041; Rice v. City of New York, 32 Misc 2d 942.) The affidavit of counsel avers that the village has repaired and maintained a “ good part ” of the wharf. We are not told what a ‘ ‘ good part ’ ’ means or for how long such alleged maintenance and repair have continued. In short no facts have been submitted from which a conclusion may be drawn that the village, as distinguished from the general public, has acquired any rights adverse to plaintiff’s title.
Prior to final submission the village discontinued the action against the North Fork Bank and Trust Company.