OPINION OF THE COURT
Edwin Kassoff, J.
Plaintiff Forest Hills Gardens Corporation (hereinafter FHGC), a not-for-profit corporation, is the record owner of the streets of a private residential community known as Forest Hills Gardens, which encompasses some 900 homes on its 175 acres. In an effort to control the unauthorized parking of vehicles on its streets, beginning in 1989, FHGC instituted a program of immobilizing the unauthorized parked vehicles by applying a "boot” to their wheels which prevented the car from being driven. Once a vehicle has been booted the owner must pay a redemption fee of $95 to have the vehicle released, or, after a period of time, the immobilized vehicle would be towed away and impounded. Plaintiff A-Z Parking Services, Inc. (hereinafter A-Z Parking), as an agent of FHGC, is responsible for the actual booting of unauthorized vehicles parked on the community’s streets. The defendants are the owners of vehicles that were booted who brought small claims actions against FHGC and/or A-Z Parking alleging, inter alia, that the booting program is illegal and that the redemption fee is unreasonable.
Plaintiffs brought the instant declaratory judgment action seeking a declaration: (1) that they have the right to immobilize unauthorized parked vehicles through the application of a boot, and (2) that the redemption fee $95 to remove the boot is a legal, valid and currently reasonable charge. By order to show cause plaintiffs sought an order staying all further *407 proceedings in the defendants’ small claims actions in the Civil Court until the final determination of the within declaratory judgment action; and pending the hearing on the order to show cause, all further proceedings in the small claims actions were stayed.
Subsequently, defendant Schmid moved for a preliminary injunction enjoining the plaintiffs from further immobilization of vehicles. By separate motion defendant Schmid also moved for an advisory jury pursuant to CPLR 4015 and 4212.
A hearing was held on November 20, 1989 at which time the issues were bifurcated. The court directed the parties first to introduce evidence relating to the plaintiffs’ right to boot. This evidence would relate to the first prong of plaintiffs’ declaratory judgment action and defendant Schmid’s motion for a preliminary injunction. If the court determines that plaintiffs do have such a right, then the parties are to introduce evidence concerning the reasonableness of the redemption fee, relating to the second prong of the declaratory judgment action. Conversely, if plaintiffs are found not to have the right to boot, the court will not address the issue of fees.
Additionally, the parties stipulated to allow the court to view the streets of the community, to put its findings of this viewing into evidence and to use these findings in its decision. This viewing occurred on November 21, 1989. From 7:00 a.m. to 7:30 a.m., the court alone viewed the area in question. From 7:30 a.m. to approximately 8:00 a.m., the court was accompanied by representatives of both parties. The court notes that this viewing and the evidence gathered from it, goes only to the conditions of the community and its streets as they existed at that time.
From all the credible evidence adduced at this hearing, including the stipulated viewing, the court declares that plaintiffs have the legal right to apply an immobilizing boot on unauthorized parked vehicles on its private streets.
FHGC is the record owner of the approximately seven miles of streets located within Forest Hills Gardens. It has obligated itself to the homeowners therein, who pay a maintenance charge to FHGC, to maintain and repair the community’s streets, sidewalks, curb plots, lights and sewer systems. Although FHGC has permitted the public to traverse certain streets, namely, Asean and Continental Avenues, defendants have failed to demonstrate to the satisfaction of the court that any one other than FHGC or its agents have either taken title *408 to or ever sought to keep these streets repaired or maintained at the public’s expense.
Defendants essentially contend that the streets of the Gardens have become public streets inasmuch as the public has obtained these streets either through dedication or through a prescriptive easement. Despite defendants’ bare and conclusory contentions, the streets of Forest Hills Gardens have neither been acquired by dedication or by prescriptive easement since the unorganized public cannot acquire rights by prescription or dedication by use alone (see, De Haan v Broad Hollow Estates, 3 AD2d 848; Morgan v City of Glen Cove, 6 Misc 2d 434, affd 6 AD2d 704).
The defendants do not assert that there has been a dedication of the FHGC streets through an offer and actual acceptance by the City of New York, rather they contend that by allowing the public to traverse the streets, there has been a dedication through an offer and implied acceptance. However, naked use by the public is not enough to establish a dedication. The road must not only be traveled upon by the public, but it must be kept in repair or taken in charge and adopted by the public authorities (see, Speir v Town of New Utrecht, 121 NY 420; De Haan v Broad Hollow Estates, 3 AD2d 848, supra). Here, the defendants have failed to adequately demonstrate that anyone other than FHGC has engaged in the repair or maintenance of the streets within the Gardens.
To establish a prescriptive easement, defendants must establish, by a high standard of proof, the adverse, open and notorious, continuous and uninterrupted use of the street for the statutory period (see, Epstein v Rose, 101 AD2d 646; Caswell v Bisnett, 50 AD2d 672, lv denied 38 NY2d 709; CPLR 212).
However, as with dedication, use alone by the public of a private street will not transform the street into a public street under a theory of prescriptive easement (see, American Nassau Bldg. Sys. v Press, 143 AD2d 789; Impastato v Village of Catskill, 55 AD2d 714, affd 43 NY2d 888). In addition to use by the public, there must also be a finding that the street has been continually maintained or repaired for the statutory period, and thus, adopted by the public authorities for public use (see, Impastato v Village of Catskill, supra; Jakobson v Chestnut Hill Props., 106 Misc 2d 918). Also, where permissive use of the roadway can be implied from the beginning, no adverse user may arise until there is an assertion of a hostile *409 right which is made known to the owner (see, Hassinger v Kline, 91 AD2d 988).
As stated previously, in the instant case, defendants have failed to demonstrate that anyone other than FHGC has engaged in the regular repair or maintenance of the streets, sidewalks, curbs, lights and sewer systems. Nor have defendants shown that anyone has asserted a right which was hostile to that of FHGC. Furthermore, the court notes that the private nature of the streets was necessarily decided in a prior action in which it was determined that FHGC “owns and maintains” the streets located within the Gardens (Forest Hills Gardens Corp. v Kowler, 80 AD2d 630, affd 55 NY2d 768). Accordingly, the streets of Forest Hills Gardens remain private in nature.
It is well settled that a private residential community, upon proper notice to the public, may assure compliance with its rules prohibiting unauthorized parking by nonresidents on its private streets by the vigorous use of traditional common-law remedies (see, Fieldston Prop. Owners’ Assn. v City of New York, 16 NY2d 267, 269; Forest Hills Gardens Corp. v Kowler, supra, at 631). Applying this standard to the matter herein, the court finds FHGC’s booting program as a pretowing procedure falls well within the self-help ambit of " 'rigorous use of traditional common-law remedies’ ” (see, Forest Hills Gardens Corp. v Kowler, supra, at 631).
In Kowler (supra), FHGC’s program of towing unauthorized parked vehicles from the private streets of the Gardens to a garage located in Astoria was declared to be within this self-help ambit available to private residential communities. Although Kowler did not expressly consider what other measures would fall within the sphere of proper self-help remedies, the scope of these remedies should be sufficiently flexible so as to meet the community’s special needs under all circumstances.
The record reveals that the towing program in the Gardens proved to be a limited success in preventing unauthorized parking. Due to the limited amount of equipment available, the unavailability of towing facilities at certain hours of the night, and the refusal of the tow truck operators to remove vehicles at night or during inclement weather for safety reasons, the towing program failed to effectively prevent unauthorized parking despite its continued use for nearly a decade.
*410 Accordingly, FHGC instituted the present booting program. Parenthetically, a prior booting program of the early 1970’s failed since the boots then available were of such a poor quality and design so as to be easily destroyed or removed. Under the present program, a new technologically improved boot the so-called "Denver Boot,” has been applied to offending vehicles for a reasonable period of time until such vehicles are either towed and impounded to various garages or until they are redeemed prior to towing.
The court finds that there is little difference in effect between the use of a boot and towing and impoundment. The use of the boot, however, is both far more preferable and less onerous than towing from the Gardens. Not only does the application of the boot greatly reduce the potential harm to the vehicle itself, it can also be applied at night and during inclement weather, and thus, it can be safely employed in various circumstances where towing was impractical and dangerous. Moreover, the booting program has the advantage of not requiring the vehicle owners to travel, at great inconvenience and expense, out of the community to recover their vehicles at various garages located many miles away. Under the booting program, violators may go directly to the offices of plaintiff’s agent, which are located within the community and which are open 24 hours a day, 7 days a week to redeem their vehicles prior to towing.
Furthermore, FHGC has properly given adequate notice to the public that their streets are private and that violators will be towed and/or immobilized. FHGC has clearly posted signs at all entrances advising the public that the streets are private and that parking is prohibited. Within the community and along its streets, FHGC has also placed some 250 signs stating that the streets are private, that parking is prohibited and that violators will be towed at owner’s expense. These signs were altered in August 1989 to expressly reflect the immobilization program.
The court declares from all the evidence, including the viewing, that these signs are sufficient in number, conspicuously placed (approximately every 100 feet) and clearly visible. The court determines, furthermore, that the 250 signs erected prior to the August 1989 signs allowed FHGC and its agents to apply boots since booting, as applied by the plaintiffs, is a pretowing device and the signs adequately warned the public that violators would be towed.
*411 FHGC may also boot the vehicles of residents of the Gardens who failed to affix a current year’s identification decal and the vehicles of their visitors who failed to display a proper authorization note on their dashboards. A private community’s corporate association may enforce its rules restricting parking on its private streets absent evidence that the rules were unreasonable or enacted by the community’s board of directors in bad faith (see, Gillman v Pebble Cove Home Owners Assn., 154 AD2d 508).
Defendant Schmid’s motion for a preliminary injunction is denied. The movant failed to demonstrate a likelihood of success on the merits in light of the foregoing discussion (see, Weissman v Kubasek, 112 AD2d 1086). Moreover, defendant has failed to show the requisite irreparable injury in that there is no indication that he cannot be adequately compensated in money damages if his claims are sustained (see, Hoppmann v Sargent Stein, Inc., 141 AD2d 332).
Defendant’s motion for an advisory jury is also denied inasmuch as defendant has failed to demonstrate any unusual circumstances warranting such a jury (see, Borowsky v Gallin, 126 App Div 364). In any event, this motion was rendered moot in that defendant or his counsel failed to raise any objections to the court’s decision to proceed without one at the time of trial.
Plaintiffs motion to stay all further proceedings in defendants’ small claims actions in Civil Court is denied. This motion is, in effect, a motion for a preliminary injunction. (See, Siegel, NY Prac § 255.) This court cannot issue a blanket injunction staying more than 100 such small claims matters based on the record before it. It would be more appropriate that any such stay emanate from the Civil Court on a case-by-case basis.
Finally, plaintiffs’ motion for a declaratory judgment is held in abeyance pending the determination of the issue of the reasonableness of the redemption fees. The parties are directed to see the clerk of this part for a date and time for a hearing on this matter.
[Portions of opinion omitted for purposes of publication.]